## BANK v. GARCEAU.

### (134 N. W. 882.)

**Note — conditional delivery — proof of, by circumstances surrounding transaction.**

    1. That the delivery of a note was conditional, or that the title of the payee was defective, may be shown by circumstances without any express words to that effect.

**Insurance — note given for premium — condition that application is accepted — transfer of note to third party — notice of condition.**

    2. Defendant gave one S., a life insurance agent, his application for a policy on his life, subject to defendant's passing a physical examination and the insurance company accepting the application, such physical examination to be thereafter made. At the same time, and as a matter of convenience to S., defendant executed to S. as payee his negotiable promissory note, payable at a

future date, for the first year's premium, for which S. gave defendant a binding receipt showing, among other things, that in case of rejection of the application the note was to be returned to the maker. V., cashier of plaintiff bank, was present, heard all the conversation between the parties, was perfectly familiar with the method of S. and of the insurance company in such transactions, and knew the note was to be returned if the policy should not be issued. He shortly, as the executive officer of the plaintiff, discounted defendant's note for S. *Held*, that the note was not to take effect unless defendant passed the physical examination required and the application was accepted by the insurance company.

*Held*, also, that by reason of these facts the title of S., to the note was defective, and that his negotiation thereof before the examination of defendant was in breach of faith, and in law a fraud on the maker.

*Held*, further, that if the bank was charged with the knowledge of its cashier it was also charged with knowledge of the defective title and the breach of faith of S., and was not a holder in due course, and its action in taking the instrument amounted to bad faith.

**Notice to cashier as notice to bank.**

*Held*, under the circumstances of this case, that the bank was charged with knowledge of the facts of which its cashier had knowledge or notice.

Opinion filed February 1, 1912.

Appeal from judgment of the District Court of Grand Forks county; *Templeton, J.*

Reversed.

*W. J. Mayer,* for appellant.

*George R. Robbins,* for respondent.

SPALDING, Ch. J. The complaint in this case asks for the recovery of $73.40, with interest, on a negotiable promissory note executed by the defendant, payable and delivered to one F. C. Stevens, and by him indorsed to plaintiff.

To the complaint the defendant answered, alleging the following facts: That on July 22, 1908, at the solicitation of said Stevens, he made application to the Minnesota Mutual Life Insurance Company for a policy of life insurance upon his life, upon payment of the agreed premium of $73.40; that, at the time of such application, and in the belief that it would ultimately be accepted by said company and a policy issued, defendant signed a promissory note similar in form

22 N. D.—37.

to the one described in the complaint, and gave it into the possession of said Stevens, to hold the same for defendant pending his examination as a candidate for such policy, the acceptance of such risk by the company, and the issuance to him of the policy applied for; and that such note was to be delivered by said Stevens in payment of the premium of said policy when issued, and to be of validity, force, and effect only in the event of the issuance of such policy; and that such note was given into the possession of said Stevens for no other purpose; that the defendant failed to pass successfully the examination before the company's physician; that his application was rejected and no policy ever issued thereon; that such note was at all times without consideration, and void; that immediately after securing possession of the note said Stevens, without the knowledge or consent of the defendant, fraudulently negotiated the same to the plaintiff, who purchased and received the same with full knowledge and notice of all the foregoing matters, and was not a bona fide holder thereof.

The trial was to the court without a jury; the findings and judgment for the plaintiff. By the appeal we are called upon to determine whether such findings and judgment were justified by the evidence and the law. The note was payable one year after its date.

Stevens, the original payee, testified for the defendant that on July 22, 1908, he was employed soliciting life insurance for the company named; that the defendant submitted an application for a policy, and that the note in suit was taken in settlement of the premium; that at the time the application was submitted defendant had not been physically examined; that applications require acceptance by the company itself and a medical examination before a policy is issued; that in case of rejection the note was to be returned to defendant; that they did not speak about rejection, but that it was understood in all cases that "if a man is rejected for life insurance his note is always returned;" that if he did not give him a receipt he should have given him one, and that he always did so; that the application of defendant was rejected about a year thereafter; that Mr. Verry, cashier of the plaintiff, was with him at the time this application was obtained and that he took the note and gave him credit on account in the plaintiff bank, within a short time, and he thought within a couple of hours after the application was written; that he had an account at

the bank at that time and was given credit thereon for 75 per cent of the note.

On cross-examination he testified that such credit was given on that day; that returning the note did not enter his mind, for the reason that the defendant looked like a good risk and he did not think there was any possibility of his being rejected; that the cashier knew that defendant had not been examined and the application had not been accepted; that such cashier had a contract with the same company to solicit life insurance, and had been around with the witness more or less in the insurance business for a couple of years or more, and had taken parties to the doctor for him, and knew the character of applications, and was familiar with the fact that they were to be sent in and had to be passed on by the company before a policy would issue; and that the note in question would necessarily be returned to the defendant in case of rejection; that it was understood between him and the cashier that that would be the disposition of the note in such case.

The company never received any part of the proceeds of the note, or knew of there being a note. The cashier testified that he was present when the application and note were taken; that there was no conversation about the return of the note; that he had no notice that Garveau had been examined and no notice that he had been rejected; that the bank purchased the paper several days after it was taken, —within ten days; that, although he had a contract of agency for the company, knew their method of business, he had written no applications himself. He also knew that a successful medical examination was necessary before the application would be accepted, and he knew at the time the application and note of defendant were taken that if the application should be rejected the note should be or was to be returned to the defendant. His recollection was very indistinct as to when credit was given Stevens for this note. He did not ask Stevens at such time whether defendant had been examined.

The defendant is a farmer and resided in the country, and it appears from the evidence that the principal object in taking notes was to render it unnecessary for the agent to again go into the country to visit the applicant and make settlement with him, after the issuance of the policy. By taking the note, settlement was made subject to his medical examination at a convenient time.

Stevens, on being recalled, testified that the policy could not be issued before the examination of the party, and that it would have been impossible for the examination to have been made·before the cashier took the paper; and that these facts were known to Verry.

The trial court found that the delivery of the note to Stevens was absolutely unconditional, and that long prior to the maturity thereof it was indorsed and delivered to said bank for value, and in good faith, and without notice or knowledge of any defect in the title of Stevens thereto.

There was no conflict in the evidence except a trifling disagreement between Stevens and Verry as to how soon after the taking of the application the note was placed to Stevens' credit on the books of the bank. This conflict is not material. Much of the briefs of the parties is devoted to a discussion of the nature of consideration or failure of consideration for the note. We, however, are of the opinion that it is not necessary to determine these questions. Several points are not discussed which might have been. For instance, it is not shown whether the credit for the note given to Stevens was ever checked out of the bank. If it was not, according to many authorities, the bank would not be a bona fide holder for value.

The trial court apparently regarded the circumstances surrounding the procurement of the note in suit as unimportant, and relied on the testimony of Stevens and Verry that nothing was actually said with reference to a return of the note. In this we think the learned trial court was mistaken. While nothing was actually said, the circumstances were such as to indicate as clearly as any affirmative words could do, what the intention of the parties was.

That the delivery of the note was conditional, or that the title of the payee was defective, may be shown by circumstances without any express words to that effect. Wilson v. Powers, 131 Mass. 539.

In this case the whole transaction rested upon the basis and supposition that the note was to be returned if Garceau failed to pass the medical examination which was necessary to an acceptance of his application by the insurer. Such was the business method of the company and of the agent. The agent, Stevens, testifies that this was the universal rule. And if nothing was said regarding the return of the note, it is clear that it was left unsaid because Garceau looked like a good

risk, and it did not enter the mind of either Stevens or Verry that he would fail to pass the physical test. The cashier, Verry, knew all the facts and circumstances of the transaction as well as the method of doing business pursued by the company and its agents, that Stevens knew; and while it does not appear what Garceau understood, we cannot assume that any fairly intelligent man would give a note under such circumstances expecting it to be collected, if he failed to receive a policy. The conclusion which we reach is that the note was not to take effect unless Garceau passed the physical examination, and the application was accepted, and that therefore the title to the note in Stevens was defective. We discover no authority on all fours with the case at bar; but Farmers' Bank v. Nichols, 25 Okla. 547, 138 Am. St. Rep. 931, 106 Pac. 834, 21 Ann. Cas. 1160, is a well-considered case in which the distinction is pointed out between facts which render the title defective and those which do not do so. In that case the language used in the contract was not that the note should be returned, but that the party would refund the note, and it was held that the word "refund" did not limit the right of the maker of the note to its return, or require of the payee a return of the note, but that it admitted of either a return of the note or a payment of the amount thereof in cash and the collection of the note.

In the case at bar, as we have indicated, the circumstances show that a return of the note only was contemplated in case of failure to pass the examination; but we are not limited to a consideration of the circumstances to which we have adverted. It appears that the company, like most life insurance companies when a premium is paid at the time the application is taken by the agent, and before it is accepted by the company, furnishes the applicant what is known as a binding receipt, acknowledging receipt of the premium, and providing that in case of acceptance of the application the policy shall take effect at once, and also providing that in case of its rejection there shall be no liability on the part of the company, and that the amount paid, as evidenced by the receipt, will be returned. This receipt is worded to fit the payment of the premium in cash rather than by note, but Stevens testified that it was his custom when a premium was paid by cash or note at the time of the execution of the application to give one of these binding receipts, and that he was sure he gave Garceau one.

Now, assuming that he gave him such receipt,—and there is no evidence to the contrary,—fitting the receipt to a note instead of cash, it contemplates the return of the note only, and does not give the company or the payee an option to pay cash and retain the note. We think this makes it more clear that the applicant could not be compelled to accept money in lieu of the note.

The title of Stevens having been defective, his negotiation of the note was a breach of faith, and, we think, under such circumstances, was in law, though there was no intent to defraud, a fraud on Garceau. Rev. Codes 1905, § 6357. And that the bank, knowing all the facts and the method of business of the company through its agents, was charged with knowledge of the defective title, and the breach of faith and fraud of Stevens in negotiating it, and was not, therefore, a holder in due course, and that its action in taking the instrument amounted to bad faith. Rev. Codes 1905, §§ 6354, 6356–6358, 6360.

But it is urged that the bank is not charged with the notice or knowledge of Verry, its cashier. The general rule is that a bank is charged with notice of the facts of which its cashier has notice or knowledge. To this rule there are certain exceptions, as in case of an official dealing with the corporation in his own interest which is adverse to that of the corporation, which he represents, or where so long a time has elapsed since the agent acquired knowledge of the transaction that when the negotiation takes place his knowledge on the subject is not fresh in his mind. Neither of these exceptions has any application in the instant case, however. It nowhere appears that Verry was interested otherwise than as an officer of the bank, and he acquired his knowledge regarding the transaction not more than ten days prior to discounting the note, and his testimony shows that at the time of the trial the facts were still fresh in his memory. The evidence eliminates from the case any actual intent on the part of Stevens and Verry to defraud Garceau, but nevertheless it does not relieve the bank from the legal effect of the acts of the parties, which was in law a fraud upon Garceau.

If any additional reason is necessary to support our conclusion, it may be found in the testimony of Stevens that it was understood by Verry that the note would be returned in case the application should be rejected, and of Verry that he knew at the time the note was taken that it was to be returned to defendant in such case.

The facts differentiate the case very materially from American Nat. Bank v. Lundy, 21 N. D. 167, 129 N. W. 99.

The following authorities more or less strongly sustain our conclusions:

Burke v. Dulaney, 153 U. S. 228, 38 L. ed. 698, 14 Sup. Ct. Rep. 816; Graham v. Remmel, 76 Ark. 140, 88 S. W. 899, 6 Ann. Cas. 167; Watkins v. Bowers, 119 Mass. 383; Mendenhall v. Ulrich, 94 Minn. 100, 101 N. W. 1057; Joyce, Defenses to Commercial Paper, § 313.

The judgment of the District Court is reversed.