MERCHANTS NATIONAL BANK, a Corporation, Appellant, v. A. E. REILAND and H. A. Jacobs, Copartners Doing Business as the Reiland-Jacobs Motor Company, and A. E. Reiland and H. A. Jacobs, Individually, Respondents.

(199 N. W. 945.)

**Banks and banking — bank purchasing drafts by consignor afterwards dishonored, and accepting note subsequently given in settlement by consignee, held not chargeable with notice of defenses by reason of knowledge of consignor.**

1. B. consigned certain goods on bill of lading. He drew a draft on the consignee for the price thereof, attached the bill of lading and negotiated the draft in the regular course of business at the plaintiff bank. The consignee dishonored the draft and refused the goods. The bank pressed B. for payment and suggested that B. adjust the matter with the consignee. He thereafter made a settlement with the consignee and took a note in payment of the goods. He at once transferred the note to the bank, taking up the draft with a portion of the proceeds. *Held* that, while the bank, by virtue of the bill of lading, had title to the goods as security for the payment of the draft, under the facts B. was not the agent of the bank in making the settlement with the consignee and was not chargeable with notice of any defenses that might exist as against the note.

**Bills and notes — title of payee held defective so as to impose burden on transferee to show he is holder in due course.**

2. Where, in settlement of a pre-existing difference arising out of the sale of goods, a note in the ordinary form is taken and at the same time a separate writing is entered into reciting the terms of such settlement, referring to the note and providing that the same may be paid with farmers' notes, and that if necessary a portion of the goods sold shall be taken back and the price thereof credited upon the note, an immediate negotiation of the note by the payee is in breach of faith and, under the circumstances, amounts to a fraud so as to render the payee's title defective within the purview of § 6940 (Negotiable Instruments Law, § 55), Comp. Laws 1913.

**Compromise and settlement — new contract concerning same subject — matter held to have waived prior fraud.**

3. Where, notwithstanding a charge of misrepresentation, over-reaching, bad

Note.—(2) Effect of fraud in the inception of a bill or note to throw upon a subsequent holder the burden of proving that he is a holder in due course, see note in 18 A.L.R. 31; 3 R. C. L. 1043; 1 R. C. L. Supp. 956; 4 R. C. L. Supp. 233.

faith, and fraud, made touching a previous transaction, the aggrieved party, with full knowledge of all that has transpired, enters into a new contract concerning the same subject-matter, with intent to settle and adjust all past differences, he will be held to have waived any fraud and misrepresentation involved in such previous transaction.

**Appeal and error — compromise settlement — certain defenses based on prior transactions not sustained.**

4. Record examined and *held*, for reasons stated in the opinion, that the admission of certain evidence over objection was erroneous and prejudicial.

Opinion filed July 25, 1924.

Agency, 2 C. J. § 32 p. 437 n. 86. Appeal and Error, 4 C. J. § 2953 p. 972 n. 70. Bills and Notes, 8 C. J. § 226 p. 131 n. 71; § 1291 p. 984 n. 49, 51; § 1358 p. 1047 n. 10; § 1371 p. 1060 n. 40. Compromise and Settlement, 12 C. J. § 34 p. 339 n. 20 New. Fraud, 27 C. J. § 135 p. 24 n. 97.

Appeal from the District Court of Richland County, *Allen, J.* Reversed.

*Divet, Holt, Frame & Thorpe,* for appellant.

"Notwithstanding the defrauded party may redeem what he has received, stand to his bargain, and recover for the loss caused him by the fraud, he cannot maintain action for the original wrong practised on him where, with full knowledge of all the material facts, he does an act which indicates his intention to stand to the contract, and waive all right of action for the fraud." 27 C. J. pp. 22, 23; Sommers v. Carpenter (Ky.) 160 S. W. 1064; Hartford Ins. Co. v. Hanlan (Ky.) 104 S. W. 729.

"Where the person defrauded after having knowledge of the fraud enters into a new contract concerning the same subject matter, or an agreement modifying the original contract, or renews the original contract for an additional term, or requests an extension of time for performance, he will ordinarily be regarded as having waived the fraud in the original transaction." 27 C. J. p. 24; Burne v. Lee (Cal.) 104 Pac. 438; Schmidt v. Mesmer (L. A. 166) Supreme Court of Cal. March 12, 1897; Brown v. Co. (Mo.) 132 S. W. 693; Hagemans v. Caballere, 177 N. Y. Supp. 313; Thompson v. Libby, 36 Minn. 287, 31 N. W. 52; Bartleson v. Vanderhoof, 96 Minn. 184, 104 N. W. 820.

"Thus knowledge by an indorsee that the note was given in consid-

eration of an executory agreement by the payee does not deprive the holder of his character as a holder in due course, if the payee fails to perform, where the holder had no knowledge of the breach prior to his acquisition of the instrument. So the fact that the purchaser knew that the consideration was future and contingent, and that there might be offsets against it, will not effect the character of the purchaser. 8 C. J. p. 510, and notes 80, 81; Bank v. Lundy, 21 N. D. 167; Flood v. Petry (Cal.) 46 L.R.A. (N.S.) 861.

Acknowledgment of the consideration for a bill or note is not notice of subsequent failure of consideration. 8 C. J. p. 509, § 718; Splivello v. Patten, 38 Cal. 138; Rublee v. Davis (Neb.) 51 N. W. 135.

Such assertions of promissory statements are not even evidence of fraud. 12 R. C. L. § 21, p. 255.

"A fraud must relate to facts then existing or which had previously existed; hence nonperformance of a promise made in the course of negotiations is not in itself either a fraud or the evidence of fraud." Cooley, Torts, 474–486; Adams v. Scheffer, 7 Am. St. Rep. 202; Dawe v. Morris (Mass.) 4 L.R.A. 158.

An actionable representation must relate to past or existing facts, and cannot consist of broken promises, unfulfilled predictions, or erroneous conjectures as to future events. 28 C. J. 1087, § 25; 8 C. J. 786.

The questions of fraud here involved are not such as go only to formalities in pleadings which might be saved in this court by the statute of amendments, these questions go to the very heart of the case. Boston etc. Co. v. Company (Mich.) 165 N. W. 856; Davis v. McCready (N. Y.) 72 Am. Dec. 461; Forster v. Co. (Tex.) 176 S. W. 788.

In the supreme court of the United States the rule has been made by its decision, that a bona fide holder taking a negotiable instrument as payment of, or as security for an antecedent debt, is holder for valuable consideration, and entitled to protection against all equities between the antecedent parties. Northern Trading Co. v. Bank, 37 N. D. 521.

"So the purchaser of a note from a person who has had lawsuits over other notes or who has a shady reputation is not sufficient to put the purchaser on notice that there was fraud in the procurement of the note." 8 C. J. p. 518; Hutchinson v. Langley, 27 App. D. C. 234;

Vaughn v. Brandt (Idaho) 183 Pac. 591; Setzer v. Deal (N. C.) 47 S.. E. 466.

"The known insolvency of the indorser is not sufficient to put the purchaser on inquiry." 8 C. J. p. 518; Whiteside v. Bank (Tenn.) 47 S. W. 1108.

"It is error to submit a fact or state of facts which there is no evidence tending to prove, unless it stands admitted by the pleadings or otherwise." Thomp. Tr. § 2315, and cases cited.

The court should not submit any hypothetical state of facts which in the state of the pleadings and the evidence stands uncontradicted but he should tell them that such facts are established. Thomp. Tr. § 2319.

The court should not misstate the evidence or misdirect the jury. Forzen v. Herd, 20 N. D. 43.

*Purcell & Slattery,* and *Lauder & Lauder,* for respondents.

Where several instruments are made as a part of one transaction, they will be read together, and each will be construed with reference to the other. This is true, although the instruments do not in terms refer to each other. So if two or more agreements are executed at different times as part of the same transaction they will be taken and construed *together.* 13 C. J. 528 and numerous cases cited in notes.

"While the production of a negotiable instrument, properly indorsed, is prima facie evidence of the holder's right to recover against the maker, yet according to the prevailing view the maker may compel the holder to support his prima facie case with further evidence, by showing a defense that would have been available against the payee." 3 R. C. L. 1038, note 15.

The rule is not one that abridges the holder's substantive right as determined by the law merchant; it merely puts the burden of proof upon the one who knows the facts. If he is an innocent holder, the fact that the maker has a complete defense against the payee cannot effect him. 3 R. C. L. 1039, note 19.

The fact that the paper was negotiated, contrary to an agreement, before the happening of a certain future contingency, is such a fraud as will shift the burden of proof. McKnight v. Parsons, 136 Iowa, 390, 113 N. W. 858.

And when the legal and illegal ·considerations are blended and a

promissory note is taken for the whole, the note is deemed to be entire and indivisible. 3 R. C. L. 953, note 13; Russ Lumber & Mill Co. v. Muscupiabe Land & Water Co. 120 Cal. 521, 52 Pac. 995; 61 S. E. 494; 18 Ind. 273.

The holder of a negotiable instrument who has no actual knowledge of a defect in the title or other equities between the parties when circumstances come to his knowledge sufficient to put him in inquiry, is chargeable with knowledge of all the facts that such inquiry would have revealed. Walters v. Rock, 18 N. D. 45; Rocheford v. Barrett, 22 S. D. 83.

A party about to receive a bill or note, if there are any suspicious circumstances, should make inquiry. 3 Dec. Dig. p. 1764, Key No. 339.

A contemporaneously executed instrument will be considered in interpreting a promissory note. Des Moines Sav. Bank v. Arthur, 163 Iowa, 205, 143 N. W. 556, Ann. Cas. 1916C, 498; 3 R. C. L. 870.

A bank by discounting a note and passing its amount to the credit of its indorser, does not become a purchaser for value. Vol. 3, 2d Dec. Dig. 1783. National Bank v. Citizens State Bank, 132 Iowa, 706, 109 N. W. 198; Union Nat. Bank v. Windsor, 101 Minn. 470, 112 N. W. 999, 11 Ann. Cas. 204; 122 Minn. 215, 142 N. W. 139, Ann. Cas. 1914D, 977.

A holder in due course of a promissory note must establish his good faith, as a matter of law, either by direct and uncontradicted testimony or by circumstances which show consistently the good faith of his purchase so that no fair-minded person can draw any inference therefrom.

Where the plaintiff, claiming to be the bona fide holder of a promissory note in due course, does not testify that he purchased the same in good faith, and where the surrounding circumstances show that for several years prior thereto, he was the attorney for, and a stockholder in, the corporation named as payee in, and the indorser of the note, and was possessed necessarily or impliedly of such knowledge as might lead fair-minded men to draw different inference concerning his good faith, the question of the good faith of such holder is for the jury. Sweet v. Anderson, 41 N. D. 375.

If a purchaser of a note for value before maturity has notice of facts tending to show defenses to the same, he cannot purposely refrain from

making inquiries as to the inception of the paper, and at the same time claim to be a bona fide purchaser.

Payment of value on a purchase of negotiable paper before maturity, constitutes prima facie a bona fide purchase but no more.

Circumstances may rebut such prima facie presumption, and good faith in the purchase may be wanting, although the purchase was made before maturity and for value. Walters v. Rock, 18 N. D. 45.

When fraud in the inception of a negotiable instrument is alleged and proved, the burden is upon the indorsee to prove that he is a purchaser for value, before maturity without notice, and in good faith. Tamlyn v. Peterson, 15 N. D. 488.

Fraud, at the inception of the alleged contract and note, having been established, the burden shifted to the indorsee to prove by fair preponderance of the evidence, that he was a good faith purchaser, for value, before maturity, without notice. This he has failed to do. Stevens v. Barnes, 43 N. D. 483.

Where the evidence on the questions of delivery and failure of consideration of a promissory note is in conflict, such questions are properly submitted to the jury. Stark v. Wannemacher, 32 N. D. 617.

A judgment notwithstanding a verdict will not be granted in every case where a directed verdict is erroneously denied. It is only when there is no reasonable probability that the defects in proof or pleading necessary to sustain the verdict can be remedied on another trial that such judgment will be ordered. Kerr v. Anderson, 16 N. D. 36.

The testimony of a cashier of a bank that it purchased the note for value, before maturity, even though not disputed, is not sufficient to establish that fact as matter of law. McKnight v. Parsons, 136 Iowa, 390, 22 L.R.A.(N.S.) 719, 113 N. W. 858.

Improper instructions do not furnish cause for reversal where the complaining party was in no way prejudiced thereby. Swallow v. First State Bank, 35 N. D. 608, 161 N. W. 207.

So it is held that where one purchases notes with knowledge of such facts and circumstances which make him fearful to make an investigation lest it would disclose a defense, and wilfully closes his eyes thereto, he is not a purchaser in good faith. Iowa Nat. Bank v. Carter, 144 Iowa, 715, 123 N. W. 237.

NUESSLE, J. This action is brought to recover on a promissory note made by the defendants to the Bishop Company of Fargo. It appears that the plaintiff is a banking corporation engaged in business in Fargo, North Dakota; that the defendants are engaged in the automobile business in Richland county; that the Bishop Company was, at the time of the transaction out of which this litigation grew, engaged in manufacturing and selling individual electric light plants. In January, 1920, the Bishop Company entered into a contract with the defendants, under the terms of which the defendants were to buy of the Bishop Company and sell to the trade certain electric light plants. Purporting to act under this contract, the Bishop Company shipped ten plants to the defendants at Mantador, North Dakota, on bills of lading. The Bishop Company took the bills of lading to the plaintiff bank, drew drafts aggregating $2,925 against the defendants for the price of the plants, and presented the drafts, with bills of lading attached, to the plaintiff. The plaintiff in the usual course of business of this character credited the amount of the drafts to the Bishop Company's account and forwarded the bills of lading with drafts attached to the bank at Mantador. The defendants refused to pay the drafts or accept the plants, setting up various matters as reasons for this dishonor. The plants were left in the depot at Mantador and finally shipped to the railroad company headquarters in St. Paul as unclaimed freight. The drafts remained at the bank at Mantador unpaid for several months. Plaintiff desired payment and pressed the Bishop Company, and finally at the suggestion of the plaintiff the Bishop Company sent its representative to see the defendants. Thereupon and on December 14, 1920, a new contract, known in the record as Exhibit 2, was entered into between the defendants and the Bishop Company in adjustment and settlement of the differences between those parties, and at the same time a note, Exhibit 1, payable November 1, 1921, for the purchase price of the plants which had been shipped and the freight charges thereon was executed and delivered to the Bishop Company. The contract Exhibit 2 so entered into was as follows:

"Article of agreement between A. L. Bishop and Son Company, a corporation of Fargo, North Dakota of the first part, and Reiland Jacobs Motor Company of the second part. The said Reiland Jacobs Motor Company is giving a note for $3,150 in settlement for ten Gate

City light plants which was shipped to them by A. L. Bishop and Son Company of the first part. It is further agreed that the said A. L. Bishop and Son Company will send a salesman to canvass for the sale of light plants, and the said Reiland Jacobs Motor Company agrees to pay half the salary and expenses of said salesman while employed in selling the above-named plants and the profits on each sale to be equally divided between the above named parties. The said A. L. Bishop and Son Company agrees to accept farmers' notes that is rated good by the local banks for the sale of said plants at the face value of said notes and credit same on the note given by the Reiland Jacobs Motor Company in settlement of the above-named plants. The said A. L. Bishop and Son Company further agrees that if it is necessary they will transfer the last four plants to some other territory and credit the net price of said four plants on note given by the said Reiland Jacobs Motor Company."

The Bishop Company's representative immediately returned to Fargo and transferred the note to the plaintiff bank. The bank credited the Bishop Company's account with the amount of the note, which credit was at once exhausted by the Bishop Company. One of the items paid therewith was the charge on account of the original unpaid drafts on the defendant. In the meantime, however, and prior to the settlement of December 14th, the Bishop Company had sued the defendants on account of their refusal to accept and pay for the ten plants. The defendants had answered, setting up various defenses including fraud, nonperformance, etc. At the time the contract of December 14th was entered into, it was the understanding and arrangement that the same disposed of all difficulties existing prior thereto between the defendants and the Bishop Company. In August, 1921, after the making of the contract of settlement, the Bishop Company went into bankruptcy. Prior to that time, the Bishop Company had procured the ten light plants from the railroad company and they were in its possession when it was adjudged a bankrupt. No demand was made upon the Bishop Company for them, nor was there tender or offer of performance by the defendants under the terms of the contract made by the Bishop Company. There is a conflict in the testimony as to whether the Bishop Company had furnished or offered to furnish salesmen to canvass for the sale of the plants, as required by the terms

of Exhibit 2. The plaintiff bank is now suing upon the note Exhibit 1 so executed on December 14th and transferred to it. The defense is want of consideration, failure of consideration and fraud in the execution of the note and that the plaintiff took the same with knowledge of the whole transaction and subject to defenses.

On the trial the defendants offered evidence to show the particulars of the whole transaction prior to December 14, 1920. This was objected to by the plaintiff on the ground that the same was irrelevant and immaterial and that the difficulties existing between the parties had been adjusted and wiped out by the contract of December 14th. However, such evidence was received. At the close of the trial the plaintiff moved for a directed verdict. The defendants resisted the motion and also moved for a directed verdict demanding, however, that in any event the issues be submitted to the jury. The jury found for the defendants and respondents. The plaintiff moved for judgment notwithstanding the verdict, which motion was denied, and judgment was entered for the defendants on the verdict. Plaintiff now brings this appeal from the order denying its motion for judgment notwithstanding the verdict and from the judgment.

The plaintiff here contends that it was entitled to judgment notwithstanding the verdict; that it was the holder of the note in question in due course; that there were no defenses against the note at the time that appellant took it; that plaintiff had no knowledge of the collateral contract; that even though it had at the time the note was negotiated, that fact could make no difference, since the contract was wholly executory, constituted a good consideration and had not been breached at that time; that the fact that the Bishop Company subsequently became bankrupt and was in no position to perform its part of the contract, can not make any difference as against the plaintiff. Plaintiff further contends that the testimony received by the trial court as to transactions occurring before the 14th of December, 1920, was irrelevant and immaterial and could have but the effect of influencing and prejudicing the jury, and that, in any event, by reason of the erroneous reception of such evidence and on account of other errors during the course of the trial, the plaintiff is entitled to a new trial. The defendants, on the other hand, contend that the evidence of the details of the transaction prior to December 14, 1920, was properly received for the pur-

pose of showing the whole course of the transaction and the fraud therein; that the plaintiff took the note sued on with knowledge of all the defenses and was, in fact. a party to the whole transaction; that by reason of the fact that the plaintiff had advanced money on the drafts and bills of lading and had taken the same as security for such advancement, it became the owner of the property covered by such bills of lading; that when the representative of the Bishop Company made the settlement and adjustment of December 14, such settlement and adjustment was made by him as agent for the plaintiff; that, therefore, the plaintiff bank is itself the principal party in interest and not the purchaser of the note in question; that in any event the judgment should stand and the case be affirmed.

The plaintiff has specified many alleged errors on the record, which it assigns as grounds for reversal on this appeal. In the interest of brevity, we shall depart somewhat from the order of the plaintiff's assignments. A consideration of the fundamental propositions will render it unnecessary to discuss some of the errors assigned.

In the first place, we are of the opinion that there is no merit to the contention of the defendants that, by reason of the facts in connection with the drafts and bills of lading, the plaintiff was the owner of the light plants shipped and that, therefore, when at its suggestion the Bishop Company sent a representative to Mantador and made a settlement with the defendants that the Bishop Company was in such negotiations acting as the agent and for the plaintiff. It appears from the record that the whole transaction, with reference to the crediting of the drafts on bills of lading, was in the usual course of banking business. While it is doubtless true that the title to the property covered by the bills of lading was in the appellant bank (see Comp. Laws 1913, §§ 6210, 6211), yet it was so only as security on account of the advances made on the drafts for which the Bishop Company was before acceptance primarily liable. See 4 R. C. L. 33; American Thresherman v. Tamble Motors Co. (American Thresherman v. Citizens Bank).49 L.R.A.(N.S.) 644 and note (154 Wis. 366, 141 N. W. 210). When the Bishop Company, being pressed for payment and to make an adjustment of its difficulties with the defendants, sent its representative and made such adjustment, it was acting in its own behalf and not as agent of the bank. That being the case, the bank was not

chargeable with notice of what was done with relation to the adjustment and was not the owner of the note taken as a part of such adjustment.

It was the plaintiff's position at the time of the trial, and the plaintiff still seeks to maintain that position, that it was a purchaser for value of the note; that it had no notice of the collateral contract; that the contract was a good consideration for the note; and that there was no breach thereof at the time that plaintiff took the note; that even though plaintiff had notice of the contract, a subsequent breach may not be shown in defense of the note. The appellant, in support of this position, relies upon the case of Embden State Bank v. Boyle, 50 N. D. 573, 196 N. W. 820. There is no question, we believe, but that the general rule as laid down in the Boyle case is correct, and that where an executory contract is the consideration for a negotiable instrument, he who takes such instrument in good faith and for value, may recover as against the maker notwithstanding a subsequent breach which would constitute a good defense as between the parties. See also McNight v. Parsons, 136 Iowa, 390, 22 L.R.A.(N.S.) 718, 125 Am. St. Rep. 265, 113 N. W. 858, 15 Ann. Cas. 665; Flood v. Petry, 46 L.R.A.(N.S.) 861 and note (165 Cal. 309, 132 Pac. 256). But we are of the opinion that the facts in the instant case are such that it is not within this rule. The facts and circumstances in each particular case must control.

Where the payee of a negotiable instrument has a defective title to the same, a third person to whom the instrument is negotiated has the burden of establishing that he is the holder in due course. That is, the ordinary rule as to the burden does not apply. See Comp. Laws 1913, § 6944 (Neg. Inst. Law, § 59). And if he fails to assume such burden and it appears that he took it with notice of all the attending facts and circumstances, then the instrument is subject to the same defenses as if it were non-negotiable. See § 6943, Comp. Laws 1913 (Neg. Inst. Law, § 58). Section 6940, Comp. Laws 1913 (Neg. Inst. Law, § 55) provides:

"The title of a person who negotiates an instrument is defective within the meaning of this chapter when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates

it in breach of faith, or under such circumstances as amount to a fraud."

We think, in the instant case, that we should consider the contract Exhibit 2 in connection with the instrument sued upon in determining whether or not the title of the payee therein was defective. See Comp. Laws 1913, § 5902. Embden State Bank v. Boyle, supra; First Nat. Bank v. Flath, 10 N. D. 281, 86 N. W. 867. See also Myrick v. Purcell, 5 Ann. Cas. 148 and note (95 Minn. 133, 103 N. W. 902). We are of the opinion that the terms of the instrument Exhibit 2 clearly indicate that when the note Exhibit 1 was executed and delivered, it was the intention of the parties that it should not be negotiated. Any other intention would be inconsistent with the provisions of Exhibit 2 as to the manner in which the instrument might be paid and as to the credits that should be given thereon in case the last four light plants were not disposed of. It is certain that if the instrument were negotiated, it would be impossible to insure the payment thereof by the taking of farmers' notes or the crediting thereon of the value of the four light plants. If these provisions had been incorporated in the note itself, it would thereby have been rendered non-negotiable. See Comp. Laws 1913, § 6886 (Neg. Inst. Law, § 1). Fleming v. Sherwood, 24 N. D. 144, 43 L.R.A.(N.S.) 945, 139 N. W. 101; 8 C. J. 130. It seems to us that it necessarily follows that a negotiation of the instrument was in breach of faith and, under the circumstances, amounted to a fraud and that the payee's title was defective within the purview of § 6940, supra. It therefore follows that the instrument sued upon was subject to the same defenses in the hands of the plaintiff as when in the hands of the payee, unless the plaintiff was able to assume the burden and establish by a preponderance of the evidence that it was a holder in due course. We think that there is evidence in the record which might warrant the jury, if they saw fit so to do, in holding that the plaintiff had actual knowledge of the contract and that it did not act in good faith in taking the instrument sued upon.

It appears from the record that the light plants were never in fact delivered to the defendants. It is impossible to say whether or not a delivery of the plants can now be made or might have been made at any time since the bankruptcy of the Bishop Company in August, 1921. There is some dispute as to when and under what conditions

such deliveries were to be made. It is not clear whether the Bishop Company was the party on account of whose fault the contract was not complied with or whether the fault was on the part of the defendants. We think there was at least a question as to whether the defendants had a good defense, in whole or in part, as against the Bishop Company and that it was for the jury to say from all the evidence whether such defense existed.

These things being true, it is manifest that the plaintiff's motion for a directed verdict, made at the close of the case, was properly denied. It follows that the motion for judgment notwithstanding the verdict was likewise properly denied. There remains, then, the question as to whether there was such error of law during the course of the trial as to require a reversal and new trial. The plaintiff insists that there was. It specifies many errors arising on account of rulings by the court touching the admission or rejection of evidence. The first assignment of the plaintiff, in this respect, is based upon those alleged errors specified by reason of the admission of evidence tending to show the particulars of the original transactions between the Bishop Company and the defendant. The original contract between these parties was entered into on January 26, 1920. The defendants offered testimony to show the details and particulars of the transactions leading up to the execution of that contract and subsequently thereto. All such matters occurred prior to the 14th of December, 1920 when the contract Exhibit 2 was entered into. There is no question but that it was the intention of the parties to the contract Exhibit 2 to adjust and wipe out all of the difficulties that existed between them prior to the time when they entered into such contract. The defendants had full knowledge of what had been done with respect to the original contract by the Bishop Company. There is no room to say that they did not know of every fact that existed touching those previous transactions. In their answer, they pled an adjustment and settlement of all existing differences by the contract Exhibit 2. It therefore seems to us that when the defendants were permitted to offer evidence showing all of those matters and things which they relied upon as establishing fraud, misrepresentation, failure or want of consideration, or kindred matters touching the earlier transactions, such offers were properly objectionable on the ground that they were immaterial. All of those matters and things were

waived by the contract Exhibit 2.    See 27 C. J. 24 and cases cited.
The nature of this evidence was such that its admission could not be
otherwise than prejudicial to the plaintiff.    We, therefore, think that
on this account the judgment must be reversed and a new trial ordered.

Various other matters are specified and assigned as error.    However,
what we have said above renders it unnecessary to consider such mat-
ters.    Judgment reversed and a new trial ordered.

BRONSON, Ch. J., and BIRDZELL, JOHNSON, and CHRISTIANSON, JJ.,
concur.