NORMA STATE BANK, NORMA, NORTH DAKOTA, a Corporation, Appellant, v. J. B. SCALF, Respondent.

(228 N. W. 209.)

Opinion filed December 6, 1929.

*P. M. Clark,* for appellant.

*J. E. Bryans* and *F. J. Funke,* for respondent.

NUESSLE, J. The plaintiff, a domestic banking corporation, brought this action to recover on a promissory note executed by the defendant. The note is for $200 and interest, bearing date November 11, 1920, and payable October 1, 1921. Defendant, admitting the execution of the note, denied that the plaintiff was a holder in good faith for value, denied that there was any consideration for the same, and alleged that the note was conditionally delivered and never became effective. The cause was tried to a jury. Defendant had a verdict. Plaintiff having laid the proper foundation therefor moved for judgment notwithstanding the verdict. This motion was denied and judgment was entered on the verdict. Plaintiff then perfected this appeal from the judgment and from the order denying his motion.

Plaintiff specifies numerous errors upon this appeal on which he relies for a reversal. Passing those predicated on error in the admission or rejection of evidence, excepting to say generally that if there was error it was error without prejudice, we will consider the principal contention made by the plaintiff; that is, that the evidence was not sufficient to justify the finding of the jury that the plaintiff was not a holder for value in good faith of the note upon which it seeks to recover.

Viewing the evidence in the light most favorable to the defendant, as we must in the light of the verdict of the jury, the record discloses the following facts: The plaintiff is a domestic banking corporation doing business in Norma, a village of about 150 population. One Shortridge operated a general store in the village. Things were not going well with his business and he conceived the idea of organizing a co-operative corporation which would buy the business from him and operate it. So he enlisted the services of a concern which was engaged in organizing such corporations. They sent a man by the name of Gerard to help him. Shortridge and Gerard went about among the residents of the community and solicited memberships in the proposed enterprise. A number were interested and signed an agreement preliminary to organizing the co-operative corporation. It was proposed

that the members of the corporation should pay $200 per share for the stock, and notes were given for the stock·subscribed payable to the corporation. Shortly before the general election in the fall of 1920, a meeting of those interested was called to be held in Norma. At this meeting steps were taken looking toward the formation of the corporation. There was some discussion as to how many members should be secured before the corporation was organized and a motion was put by one of those present that the organization should be postponed until toward the next harvest. This motion was carried. At this meeting one Dahl, the president of the plaintiff bank and in active charge of its management, was present. Shortridge and Gerard were also there. The defendant was not. Dahl was asked as to whether the bank would cash the membership notes. He said he was reluctant to do this as money was scarce. He, however, made some inquiry, and there was some discussion as to when the notes were to be negotiated and used, and Shortridge or Gerard said that this would not be done until at least 75 members had subscribed and given their notes. Notwithstanding the fact that the motion that there be no immediate incorporation was carried, directors for the proposed corporation were selected and one Tunnell was elected president and one Melin was elected secretary. A vice-president and treasurer were also elected. By-laws were adopted and the corporate name, Peoples Cooperative Mercantile Company, was chosen. On November 11, Gerard and Shortridge approached the defendant Scalf. Scalf was a resident of the village and operated a pool hall there. They induced him to agree to take stock in the proposed corporation and to give his note therefor for $200 payable to the corporation. He executed the note upon the assurance from Shortridge and Gerard that the corporation would be organized and the stock delivered to him and that the note would not be used unless and until 75 members had subscribed, and if that number did not subscribe it would be returned to him. But he did not sign the subscription agreement. Shortridge was Scalf's half brother and Tunnell, who had been elected president, was his brother-in-law. Shortly thereafter Tunnell and Melin and the directors who were elected at the meeting heretofore referred to, took some preliminary steps toward incorporating the company but did not complete the incorporation. They did, however, arrange with Shortridge

to take over his store and stock of merchandise. The merchandise was inventoried and the deal was completed with Shortridge. He was given notes for the purchase price, purporting to be the obligations of the corporation, signed with the company name by the president and secretary, and as collateral to these notes some forty stock notes of the subscribers were endorsed and delivered to him. He was made the manager of the business and it was continued with him in charge as such. An account in the name of the company was opened in the plaintiff bank. The business was thus continued for several years. At least two annual meetings of the members of the company were held. Scalf knew that the business was being continued in this manner and was a customer at the store. Shortridge owed the plaintiff bank. He sold the bank two of the notes given to him in payment of the purchase price of his stock of merchandise. The proceeds were used by him in discharging his obligation to the bank and in paying interest and taxes on property which the bank held as security. He also turned over some twenty-six of the subscribers' $200 notes as collateral security. These had been endorsed to him by Tunnell as president of the corporation. He in turn endorsed them over to the bank. Among them was the note on which this suit was brought. As a matter of fact at the time this transaction with the bank occurred, which was on December 31, 1920, only 55 subscribers for corporation stock had been secured, and this number was never increased. The officers of the bank knew that Shortridge had sold out his store and that the co-operative company had taken it over; knew that an inventory had been taken; knew that the business was being run by Shortridge as manager for the company; but they did not know, nor did they make any inquiry as to how many subscribers for corporation stock had been secured. Neither did they know that Shortridge and Gerard had made any representations to Scalf at the time his note was obtained. They made no inquiry of Scalf about the note when the bank took it. The incorporation of the co-operative company was never completed. Some dissension arose among the members and the enterprise ultimately failed. No stock was issued and so, of course, none was delivered to Scalf, but Scalf never demanded the return of his note. Nor, so far as the record shows, did he demand his stock certificate. Scalf did his banking business with the plaintiff bank but nothing was said to him about

the note and no demand was made for its payment until in 1925. Under these circumstances the defendant contends that there was no consideration for his note; that the note was conditionally delivered and never became effective and that its negotiation was a breach of faith and a fraud upon him. He therefore contends that the title to the note in the payee was defective; that Shortridge had knowledge of the facts when he received the note as collateral; and that the plaintiff had knowledge of such facts that its action in taking the note amounted to bad faith.

The defendant Scalf received no consideration for the note. When the note was negotiated contrary to the agreement made with him by Shortridge and Gerard a fraud was worked upon Scalf. Citizens State Bank v. Garceau, 22 N. D. 576, 134 N. W. 882; Merchants Nat. Bank v. Reiland, 51 N. D. 287, 199 N. W. 945. Thus the title to the instrument was defective. Comp. Laws 1913, § 6940. And thus the burden was shifted to the plaintiff to prove that it became the holder in due course. Comp. Laws 1913, § 6944; American Nat. Bank v. Lundy, 21 N. D. 167, 129 N. W. 99; Citizens State Bank v. Skeffington, 50 N. D. 494, 196 N. W. 953; Baird v. Radke, 53 N. D. 583, 207 N. W. 149. There is no question but that the plaintiff acquired the instrument before maturity and for value. Nor that the plaintiff had no actual knowledge of the defect in the title. But Dahl was the president and in the active management of the plaintiff bank. Under the circumstances the bank was charged with such knowledge as he had. Citizens State Bank v. Garceau, supra. "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect or knowledge of such facts that his action in taking the instrument amounted to bad faith." Comp. Laws 1913, § 6941; American Nat. Bank v. Lundy, supra; Johanna v. Lennon, 32 N. D. 71, 155 N. W. 685. Thus the question here is as to whether we can say as a matter of law that the taking of the note by the plaintiff with such knowledge as Dahl had did not amount to bad faith.

Ordinarily the question of good faith is one for the jury. Walters v. Rock, 18 N. D. 45, 115 N. W. 511. In order to make it one of law for the court the holder "must establish his good faith either by

direct and uncontradicted testimony, or by circumstances which show consistently the good faith of his purchase so that no fair-minded person can draw any other inference therefrom." Sweet v. Anderson, 41 N. D. 375, 170 N. W. 869. Does the plaintiff's showing here meet this requirement?

At the meeting of those interested in the co-operative enterprise held in November and which Dahl attended, officers and directors were elected, by-laws were adopted, and the name of the company was chosen. Thereafter Shortridge's stock of goods was inventoried and the business was taken over by the company. Shortridge was in charge as manager. An active account in the name of the company was opened in the plaintiff bank. Dahl knew of all of these things. On the other hand, he knew nothing as to the representations that were made by Shortridge and Gerard when the note was obtained from Scalf. After the business was taken over by the officers of the co-operative company, Shortridge held the purchase price notes signed by the company through its president and secretary and likewise held stock notes endorsed to him as collateral thereto. Dahl had no actual knowledge either that the corporation had not been formally organized or that 75 stock subscribers had not been obtained. His conversation with Gerard and Shortridge at the November meeting was not such as to give him notice of the defect in the title to the note in suit.

He was not required to ask Scalf whether or not there was any defense to the note. "Good faith in the purchase of a negotiable note does not require the purchaser to make inquiries as to the purpose for which it was given or as to the existence of possible defenses. Bad faith is imputed only from knowledge or notice of the fraud or defenses. Mere knowledge of suspicious circumstances will not defeat a recovery." First Nat. Bank v. Flath, 10 N. D. 281, 86 N. W. 867. Here there were no suspicious circumstances. The fact that Shortridge owed the bank did not alter the situation. Dahl knew that the notes which he took from Shortridge were given by the company for the purchase price of his business and stock in trade. The notes were regular. They were executed in the name of the company by the president and secretary who had been elected at the meeting which Dahl attended, and the business had been taken over and was being conducted for and in the name of the company. Under these circumstances

there was no reason why the bank should not buy the notes and receive payment of the Shortridge obligations out of the proceeds thereof. Certainly in so acting there was no bad faith. The course the bank followed was in accordance with reasonable business judgment. The company had bought the business. Shortridge received the notes in exchange for it. The bank would have been derelict in its duty to its depositors and stockholders if it had permitted the sale without securing itself out of the purchase price. Likewise there was no reason why the collateral notes which Shortridge held should not be taken when the principal notes were bought by the bank. These collateral notes also were regular and the transaction was the ordinary business transaction. Scalf was the half brother of Shortridge and the brother-in-law of Tunnell. Certainly there was nothing that would lead Dahl to believe that Shortridge and Tunnell were taking advantage of Scalf. Had the co-operative enterprise succeeded the notes would have been paid and no one would have complained. It failed. Few men will cheerfully and willingly pay for a dead horse. So this suit resulted. The defendant relies upon the case of Citizens State Bank v. Garceau as sustaining his contention that the bank acted in bad faith. In the Garceau Case, however, it appears that the plaintiff bank took the note there in question with knowledge that it was conditionally delivered and at a time when it knew that the condition could not have been performed. That is not the case here. We are of the opinion that the taking of the note by the plaintiff under all of the circumstances disclosed was such that no fair-minded person can draw any inference of bad faith therefrom. This being so the plaintiff was a holder in due course, and its motion for judgment notwithstanding the verdict should have been granted.

BURKE, Ch. J., and BURR, BIRDZELL, and CHRISTIANSON, JJ., concur.