THE AMERICAN NATIONAL BANK, a Corporation, v. A. E. LUNDY.

(129 N. W. 99.)

**Bills and Notes — Bona Fide Purchaser — Burden of Proof — Knowledge of Suspicious Circumstances — Negotiable Instruments Law.**

  1. Following First Nat. Bank v. Flath, 10 N. D. 281, 86 N. W. 867, it is

Note.—That fraud in obtaining the execution of a note is no defense in favor of the maker against a bona fide holder is shown by a review of the authorities in a note in 36 L.R.A. 434, and the question of presumptions and burden of proof in an action on note by purchaser is treated in a note in 17 L.R.A. 326. The question

*held,* that in an action by a purchaser, in due course, of a negotiable promissory note, the burden is cast upon the plaintiff to show himself a purchaser in due course, etc., when the defendant pleads and establishes the fact that the note was obtained by the original payee through fraud or was negotiated in breach of faith, but that such burden is sustained by the indorsee plaintiff showing a purchase for value and before maturity; and, further, that good faith does not require the purchaser to make inquiry as to the purpose for which a note was given or as to the existence of possible defenses, and that bad faith is only imputed from knowledge or notice of fraud or defenses and that mere knowledge or notice of supicious circumstances will not defeat a recovery. *Held,* further, that this rule has not been relaxed by the enactment of the negotiable instrument law.

**Bills and Notes — Bona Fide Purchaser — Actual Knowledge of Defects.**

2. To defeat recovery on a negotiable promissory note purchased before maturity, where the defense is fraud in the inception of the note or negotiation in breach of faith, it must be shown that the indorsee had actual knowledge of the infirmity or defect, or knowledge of such facts as to amount to bad faith.

**Bills and Notes — "Constructive" and "Actual" Notice of Defects — "Notice" — Statutory Construction.**

3. Section 6702, Rev. Codes 1905, provides that constructive notice is notice imputed by the law to a person not having actual notice, and § 6703, R. C. 1905, that every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself, since the enactment of the negotiable instruments law have no application to actions upon negotiable instruments in the hands of indorsees before maturity, if they ever had such application, being superseded by § 6358, which defines notice in such case as actual knowledge of the infirmity or defect, or knowledge of such facts as to amount to bad faith.

**Bills and Notes — Evidence.**

4. In an action brought by an indorsee before maturity to recover on a negotiable promissory note, evidence that persons other than the defendant had given notes for a similar consideration, which notes had been placed in the hands of the plaintiff bank merely for collection, which bank had been informed by the makers that they suspected fraud in the inception of the notes, who thereafter informed the bank that matters were satisfactory and paid the notes, is inadmissible.

what circumstances are sufficient to put a purchaser of negotiable paper on inquiry is treated in a note in 29 L.R.A. (N.S.) 351. On the general subject who is bona fide holder of note, see notes in 9 Am. Dec. 272; 44 Am. Dec. 698; and 35 Am. Rep. 688.

**Bills and Notes — Bona Fide Purchasers — Bad Faith.**

5. Showing knowledge of a contract made by the parties to a negotiable note and as a part of the same transaction is insufficient to charge an indorsee of the note for value and before maturity with bad faith, without also showing his knowledge of a breach of such contract.

**Bills and Notes — Evidence — Fraud.**

6. Certain testimony *held* erroneously received in the absence of proof connecting appellant with knowledge of a general scheme on the part of the original payee of the note to defraud parties who gave them.

**Bills and Notes — Evidence.**

7. Minor questions on admissibility of evidence passed upon.

Opinion filed December 23, 1910.

Appeal from the District Court of Barnes county; *Burke, J.*

Action upon a promissory note. Defendant had judgment.

Reversed and new trial granted.

*Lee Combs,* for appellant.

Mere knowledge of suspicious circumstances will not defeat a recovery. First Nat. Bank v. Flath, 10 N. D. 281, 86 N. W. 867.

Being an officer of a purchasing bank and the corporation that is payee of the note is not notice, if he is ignorant of the defenses. Iowa Nat. Bank v. Sherman, 17 S. D. 396, 106 Am. St. Rep. 778, 97 N. W. 12.

Not mere suspicion, but bad faith and want of honesty, must be shown. Dobbins v. Oberman, 17 Neb. 163, 22 N. W. 356; 7 Cyc. Law & Proc. pp. 945, 946; First Nat. Bank v. Moore, 78 C. C. A. 581, 148 Fed. 953; Joyce Com. Paper, § 475; Sinkler v. Siljan, 136 Cal. 356, 68 Pac. 1024; Massachusetts Nat. Bank v. Snow, 187 Mass. 159, 72 N. E. 959; Robbins v. Swinburne Printing Co. 91 Minn. 491, 98 N. W. 331, 867; Tamlyn v. Peterson, 15 N. D. 488, 107 N. W. 1081; Walters v. Rock, 18 N. D. 45, 115 N. W. 511; 7 Cyc. Law & Proc. p. 948 and cases there cited.

Knowledge that a note was not to be paid on a certain contingency already taken place, if buyer was ignorant of it, will not defeat recovery. Miller v. Ottaway, 81 Mich. 196, 8 L.R.A. 428, 21 Am. St. Rep. 513, 45 N. W. 665; Adams v. Smith, 35 Me. 324; Kelso v. Frye, 4 Bibb, 493; Dow v. Tuttle, 4 Mass. 414, 3 Am. Dec. 226; Davis v.

McCready, 17 N. Y. 230, 72 Am. Dec. 461; Tiedeman, Com. Paper, :§ 42, and cases cited.

*Page & Englert,* for respondent.

Whether plaintiff purchased in good faith was for the jury. Walters v. Rock, 18 N. D. 45, 115 N. W. 511; Tamlyn v. Peterson, 15 .N. D. 488, 107 N. W. 1081; Mendenhall v. Ulrich, 94 Minn. 100, 101 N. W. 1057; Mee v. Carlson, 22 S. D. 365, 29 L.R.A.(N.S.) 351, 117 N. W. 1033; Rochford v. Barrett, 22 S. D. 83, 115 N. W. 522; Bank of Spearfish v. Graham, 16 S. D. 49, 91 N. W. 340; Montrose Sav. Bank v. Claussen, 137 Iowa, 73, 114 N. W. 547; McNight v. Parsons, 136 Iowa, 390, 22 L.R.A.(N.S.) 718, 125 Am. St. Rep. :265, 113 N. W. 858, 15 A. & E. Ann. Cas. 665; Neyens v. Worthington, 150 Mich. 580, 18 L.R.A.(N.S.) 142, 114 N. W. 404; Joy v. Diefendorf, 130 N. Y. 6, 27 Am. St. Rep. 484, 28 N. E. 602; Canajoharie Nat. Bank v. Diefendorf, 123 N. Y. 191, 10 L.R.A. 676, 25 N. E. 402; Mutual Loan Asso. v. Lesser, 76 App. Div. 614, 78 N. Y. Supp. 629; McGammon v. Shantz, 49 App. Div. 460, 63 N. Y. Supp. ·611; Padget v. O'Connor, 71 Neb. 314, 98 N. W. 870; Harrington ·v. Butte & B. Min. Co. 27 Mont. 1, 69 Pac. 102; Taft v. Myerscough, 197 Ill. 600, 64 N. E. 711; Kipp v. Smith, 137 Wis. 234, 118 N. W. .848.

Where there is fraud or lack of consideration, proof of these may be given, and burden is then on plaintiff to show that he is a holder in due course and for value. McNight v. Parsons, 136 Iowa, 390, 22 L.R.A.(N.S.) 718, 125 Am. St. Rep. 265, 113 N. W. 858, 15 A. & E. Ann. Cas. 665; Rochford v. Barrett, 22 S. D. 83, 115 N. W. 522; Bank of Spearfish v. Graham, 16 S. D. 49, 91 N. W. 340; Padget v. O'Connor, 71 Neb. 314, 98 N. W. 870; Neyens v. Worthington, 150 Mich. 580, 18 L.R.A.(N.S.) 142, 114 N. W. 404; Goodrich v. McDonald, 77 Mich. 486, 43 N. W. 1019; State Nat. Bank v. Bennett, .8 Ind. App. 679, 36 N. E. 551; Bowman v. Metzger, 27 Or. 23, 39 Pac. 3, 44 Pac. 1090.

Knowledge of bad faith may be shown by evidence, direct or circumstantial. Bowman v. Metzger, 27 Or. 23, 39 Pac. 3, 44 Pac. 1090; Schmueckle v. Waters, 125 Ind. 265, 25 N. E. 281.

SPALDING, J.   This is an action brought to recover on two negotiable promissory notes executed and delivered by the respondent to the Great Western Beet Sugar Company, and purchased by and indorsed to the appellant for value four days after their execution and delivery to the Sugar Company.   They bear date the 14th day of May, 1906. One is for $748, payable the 14th day of May, 1907, while the other is for $630 and payable the 1st day of October, 1907, and they bear interest at the rate of 6 per cent per annum from their date.   The answer, in short, alleges that they were executed and delivered by the respondent to the Great Western Beet Sugar Company, a corporation, as the purchase price for certain land and a water right in the state of Idaho which the payee claimed to own or control and be able to convey, and that at the time the notes were executed and delivered, contracts were also executed by the Sugar Company and delivered to the respondent, agreeing to convey such land and water right, and that another independent contract was at the same time executed and delivered, to the effect that if the respondent should visit Idaho at any time within one year, and should then become dissatisfied with his purchase, the Sugar Company would return all payments made and the notes to him.   The answer also alleges that the appellant had full notice and knowledge of such agreements, and of all other facts set forth in the answer, prior to the time it became the holder of the notes in suit, and that for a long time prior thereto the cashier of the appellant bank had been a stockholder and member of said sugar company, and acquainted with the condition of said company, and its method of doing business, at the time of purchasing said notes and for a long time prior thereto; and further that the sugar company owned neither land nor water rights so agreed to be conveyed, and was unable to convey them; that respondent ascertained these facts on a visit to Idaho within the time required, and duly demanded of the company the return of the notes in question and the money paid.

The trial resulted in a verdict and judgment in favor of defendant, whereupon plaintiff submitted a motion for judgment notwithstanding the verdict, or for a new trial.   The motion was denied and plaintiff appeals.   We have heretofore filed an opinion in this case, reversing the judgment of the lower court and granting a new trial. Petitions for a rehearing have been submitted by both parties, and,

on a further examination of authorities and more extended considera-
tion of this controversy, we think, while adhering to our original con-
clusions, that a new trial should be granted that incidental conclu-
sions stated in our former opinion should be modified or changed.
Many errors are assigned regarding the admission of evidence intro-
duced for the purpose of showing fraud in the inception of the con-
tract and in the negotiation of the notes, which it will not be neces-
sary to notice.  Without taking up the evidence in the exact logical
order, it may be said that it fully sustains the answer of the defend-
ant that, as a part of the same transaction as the giving of the notes,
the contracts set forth in the answer were executed and delivered, and
that the respondent visited Idaho within the time limited and was
dissatisfied with his trade, and elected to rescind the same in accord-
ance with the terms of the contract.  Much parol evidence was ad-
mitted over objection, as to conversations between the respondent and
the agent of the sugar company regarding the representations made
to induce the giving of the notes, and with employees and officers re-
garding the reasons for his dissatisfaction with his venture.  Error
is assigned as to practically all of these conversations, and we think
that at least those preceding the execution of the contracts were im-
properly admitted in so far as they relate to stipulations and negotia-
tions subsequently covered by and embodied in the written contracts.
Of course, in so far as such conversations have any tendency to dis-
close a fraudulent enterprise on the part of the sugar company or any
of its officers to defraud defendant, or in so far as such conversations
disclose fraudulent representations on the part of any representative
of such sugar company made to induce, and which operated to in-
duce, defendant to enter into such contracts, such testimony was clear-
ly admissible.  The contracts were plain and unambiguous, and, as
far as they cover any of the oral negotiations relative to the terms
of the contract, explain themselves.  As to those on his visit to Idaho,
some of them are incompetent; but so much as relates to the inability
of the sugar company to locate or convey land or water right, or to
respondent's notice of rescission and demand for his money, is com-
petent.  One of these contracts brings the notes in question within
the terms of § 6357, Rev. Codes 1905, which reads: "The title of
a person who negotiates an instrument is defective within the mean-

ing of this chapter when he obtained the instrument or any signature thereto by fraud, duress, or force, or fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith or under such circumstances as amount to a fraud." The sugar company negotiated these notes in breach of faith. This court held in First Nat. Bank v. Flath, 10 N. D. 281, 86 N. W. 867, on facts which we think make that case exactly in point, that where in an action on a negotiable note by an indorsee, the burden to prove a good-faith purchase has shifted to the plaintiff by the introduction of evidence showing fraud between the original parties thereto, the burden is sustained prima facie by showing a purchase for full value and before maturity. In the case at bar proof of the express agreement to return the notes in case of dissatisfaction shifted the burden to the plaintiff, and, in accordance with the holding in the Flath Case, that burden was sustained and a prima facie case made of holding in due course by the testimony of the cashier of the appellant, who was its executive officer and had sole charge of the purchase of this paper, as to having paid a valuable consideration therefor, and, that he bought it in good faith, and had no notice at that time, or any suspicion in his mind, that respondent had or would claim any defense to the notes. Had he made any inquiry of defendant before purchasing, he could not have learned of any breach of contract or defense, as it appears by the evidence that the respondent was not aware for more than eight months after the indorsement of the notes to appellant that he had been defrauded. In the same case it is held that good faith in the purchase of a negotiable note does not require the purchaser to make inquiries as to the purpose for which it was given or as to the existence of possible defenses, and that bad faith is imputed only from knowledge or notice of fraud or defenses, and that mere knowledge of suspicious circumstances will not defeat a recovery. The case cited was tried and decided before the enactment of the negotiable instruments law in this state, and if the law was correctly construed in the opinion from which we have quoted, the same principles apply with added force since the enactment of the negotiable instruments law, because we find that § 6358, Rev. Codes 1905, defines what constitutes notice of infirmity necessary to defeat recovery in a note obtained by fraud or negotiated in breach of faith. It

reads: "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." The case at bar was tried on the theory that has been adopted in South Dakota and some other states generally, where the negotiable instruments law has not been enacted, that the provisions of § 6703, Rev. Codes 1905, are applicable in such cases. The first-named section provides that constructive notice is imputed by the law to a person not having actual notice, and the last named, that every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself. Whether these sections would have any application in the absence of the negotiable instruments law, considering other provisions of our Code, may be questioned, but without such law, the construction of these sections by South Dakota courts is in harmony with only a minority of the courts of other states. The negotiable instruments law, and particularly § 6358, supersedes and renders inapplicable the old sections quoted above, if they were ever applicable, to the purchaser of negotiable instruments, and the suspicions or knowledge of facts sufficient to put a party on inquiry as to defects in title no longer necessarily constitute notice, or charge a party with notice of defenses on the purchase of commercial paper. He must have actual knowledge of the infirmity or defect, or knowledge of such facts as amount to bad faith. It may be here said that the evidence in this case does not establish the fact contended for, that the sugar company was unable to convey the land and water rights supposed to be covered by the contract. Indeed, it is open to question whether it agreed to convey any land by the terms of the contracts of conveyance, or whether the contracts, taken as a whole, amount to anything more than an agreement to convey a water right. Respondent cites Walters v. Rock, 18 N. D. 45, 115 N. W. 511, as an authority. We do not so consider it. In that case one of the principal reasons for holding that the plaintiff was not a good-faith purchaser was the fact that he failed to sustain his burden of proof by positive evidence, by failing to testify that

the purchase was in good faith, and only testified as to the negotiation of the note and that it was sold to him before maturity. He said nothing about the time of payment nor how paid, and his whole testimony was evasive and contradictory with reference to facts which must have been within his own knowledge, and he made no attempt to show that he did not have notice of defenses when he purchased the note. The other facts of that case made a very different question from the one presented in the case at bar.

The exhibits, being the contracts made with the respondent by the sugar company coincident with the execution of the notes in suit, were admissible in evidence to show the breach of faith affecting the title to the notes, and cast the burden upon the plaintiff. The next error to be noticed as assigned is the admission of Exhibit 1. In explanation of this exhibit, it may be said that, from the record, it appears that the principle defense relied upon by the respondent was that the cashier of the bank was a stockholder and officer in the corporation, the Great Western Beet Sugar Company. Exhibit 1 is a contract executed by that corporation on the one side and the cashier and numerous parties on the other, wherein each agreed to take $2,000 worth of stock in such corporation, and to pay therefor, and the sugar company agreed to make five of the parties directors therein, and was to transfer to each of them a water right in the state of Idaho. The contract did not designate the parties who were to be so made directors. No testimony was submitted regarding this contract, except the testimony of Grady, the cashier, who testified that that contract had never been consummated further than that he got a water right under it. He testified that he had never been a stockholder or director. Appellant strenuously objected to the introduction of this contract in evidence. We are satisfied that at the time it was offered it was properly received.

It would have had a marked bearing on the question of knowledge had it been followed up with evidence showing that the contract had been performed, and that the cashier had become a director or officer actively engaged in the conduct of its affairs, although we think the authorities are to the effect that a bank is not charged with knowledge of defenses to promissory notes purchased by it from a corporation in which the bank officers are stockholders,

unless it is also shown that they had knowledge of defenses. See Iowa Nat. Bank v. Sherman, 17 S. D. 396, 106 Am. St. Rep. 778, 97 N. W. 12, and authorities therein cited. In the absence of other evidence to show that the cashier was a stockholder or officer in the sugar company, having knowledge of its affairs and methods, we think a motion to strike out Exhibit 1, would have been sustainable had it been made. In the absence of such motion, we cannot say, under the circumstances, that reversible error occurred in admitting it in evidence, but it was of no evidentiary value. The next assignment we notice is the admission of the testimony of one Oglesby to the effect that Grady told him that he had a power of attorney authorizing him to execute a deed in the name of the sugar company to land in Idaho, and that he did execute and deliver such deed. The purpose of this testimony was to connect Grady with the action of the sugar company, and charge him with notice of knowledge of its fraudulent transaction with the respondent. We think no error was committed in the admission of this testimony. Grady squarely denied ever telling Oglesby that he had authority to execute such a deed, and that he ever executed and delivered such deed to him. If he did so tell him or did so execute such a deed, it would have some tendency to show that he was an agent of the company. The next assignment that need be noticed is the admission of evidence given by one Spangenberg, who testified that he bought some land of the sugar company and gave notes therefor, and that about November 1st, 1905, he received notice from the American National Bank that one of his notes would be due on the 15th of November, and that upon receiving such notice he went to the bank, and told Grady that he had been told by the secretary of the sugar company that he had been sold a piece of land to which the company had no title; that he was going to Idaho to investigate, and to let the matter rest until he returned; that Grady agreed to this and that he subsequently went to Idaho, saw the parties there, and fixed the matter up with the company, and on his return to Valley City paid the note. It was error to receive this evidence. It was a transaction with a third party, and had no tendency to show that Grady had any knowledge of anything further than that the company was dealing in lands or water rights, and, to sustain the defense, he must not only have known of the contracts with the re-

spondent when he purchased the notes in suit, but must also have been aware of the breach of contract on the part of the sugar company. This testimony had no tendency to prove the latter fact, and we think its receipt was prejudicial. Jennings v. Todd, 118 Mo. 298, 40 Am. St. Rep. 373, 24 S. W. 148. The witness Oglesby testified that he had given notes to the sugar company which were sent to the appellant, and that he had a talk with Grady during the month of January, 1906, about one of them, and told him that he had heard that it was for sale, that Grady asked him if it was all right, and that he replied that he supposed it was, but that he had a contract back of it, and that if the company complied with that contract, he would pay the note, while if it did not he should refuse to pay them, and that he refused to pay the amount to the bank until the company fulfilled the contract; that in a week or ten days after that conversation he told Grady he had been informed that one of his notes given the sugar company was offered to a third party at a liberal discount, and on being informed by Grady what the paper could be bought for, he purchased it. On cross-examination he testified that he went to Idaho just after Christmas, 1905, we assume to investigate the matter of the transaction between him and the sugar company. and that he never claimed that the note was owned by the bank or that he had any defense to the payment of the note, and did not tell Grady it was obtained by crooked work. This evidence was improperly admitted. It had no tendency to show knowledge on the part of Grady of any defense to the notes in suit, and was prejudicial to appellant.

Other errors are assigned as to the reception of evidence, most of which related to the question of the bank, prior to the purchase of the notes in suit, having notes for collection or sale from the sugar company. Grady's testimony on the subject being contradicted by other witnesses as to different points. We think none of this evidence was competent, in the absence of proof that connected the bank of Grady with knowledge of a scheme to defraud parties who gave notes, and being so, testimony intended to impeach Grady on these questions was incompetent. Evidence was admitted to show whether Grady made inquiry as to the financial responsibility of the respondent. This testimony undoubtedly was competent so far as it had any bear-

ing on that question, as if he did not know his financial condition and did not make inquiry, it would be a circumstance to be taken into consideration by the jury in connection with other facts, had any been shown, which might have a bearing on the good or bad faith of the appellant, but much of this evidence on this subject was wholly irrelevant, as, for instance, Grady testified that he made inquiry by telephone of a country bank, but that he did not get an answer from a certain officer of that bank. That officer was afterwards put on the stand, and he testified that he received no inquiry from Grady on the subject. Grady had not testified that he made the inquiry from that officer, and the officer testified that there were others in the bank who answer such inquiries. It would serve no useful purpose to specify the testimony of this nature which was material and which was immaterial.

Whether, after eliminating the evidence improperly received, there still remains sufficient evidence requiring its submission to the jury, on the question of the alleged connection of Grady with the sugar company and knowledge on his part of such company's fraud, we need not determine in view of another trial. The showing on these questions may be different on a new trial, and, of course, the question as to whether the case is one properly to be submitted to the jury will necessarily have to be determined in the light of such showing. Even if it be conceded that plaintiff was entitled to a directed verdict on such trial, it does not follow that it is entitled to judgment *non obstante veredicto* in this court. Kerr v. Anderson, 16 N. D. 36, 111 N. W. 614, and cases there cited; Houghton Implement Co. v. Vavrosky, 15 N. D. 308, 109 N. W. 1024.

The questions presented in this case are of great interest, and would justify an extended consideration of the conflicting authorities with the diverse rules prevailing in the different states, but the work which is incumbent upon the court just at this time by reason of a change in its *personnel* to take place the first of January, and the necessity of disposing of all cases which have been argued before this change occurs, makes it impossible to classify and distinguish authorities, and it is unnecessary to do so, because the policy of this state has been fixed by previous decisions, and does not harmonize with the

authorities on which the respondent most strongly relies to sustain the action of the trial court.

The judgment is reversed and a new trial granted.

All concur, except MORGAN, Ch. J., not participating.