**SHAW, Commissioner of Banking, v. SAN JACINTO REALTY CO. et al. (No. 2251.)**

Court of Civil Appeals of Texas. El Paso. April 11, 1929.

Rehearing Denied April 25, 1929.

hereinafter called the Cisco bank, against the San Jacinto Realty Company, as maker, and John H. Kirby, as guarantor, of two promissory notes dated March 1, 1926, payable six months after date to the maker's order in the principal sum of $5,000 each. The notes bear the indorsement in blank of the maker and the blank indorsement, without recourse, of the First State Bank, Wylie, Tex., by S. W. Sibley, president. Sibley and the North Texas National Bank, domiciled at Dallas, were originally joined as parties defendant, but as to them the suit was later dismissed. Upon an instructed verdict, judgment was rendered for the realty company and Kirby.

The notes and guaranties sued upon with others were sent from Houston by R. E. Jordan, president of the realty company, to Sibley at Dallas by letter dated April 15, 1926, which reads:

"Mr. S. W. Sibley, 411 Magnolia Building, Dallas, Texas—Dear Mr. Sibley: I am enclosing four San Jacinto Realty Company notes for $5,000.00 each and two for $2,500.00 each and Mr. Kirby's guarantees supporting these notes.

"I have addressed the guarantees to you and have made the notes payable to "ourselves" so you may place them wherever you see fit. I wish you would place one $5,000.00 note for us as soon as you can as the First National Bank of Saint Jo forwarded our $5,000.00 note today to the American Exchange National Bank for collection.

"When you place the $5,000.00 note, please pass the proceeds to Mr. Garth so he may pay off the note at the American Exchange.

"Please keep the remaining notes in your possession and when I need funds I shall write you knowing that you will be able to place them somewhere."

The $5,000 note which the letter directed be immediately negotiated was negotiated by Sibley, and the proceeds accounted for to the maker.

It was testified by Jordan that the realty company needed money from time to time, and the notes were to be held and negotiated by Sibley when he directed Sibley so to do. The notes and Kirby's separate guaranties as executed were undated. It was contemplated the notes and guaranties would be dated when negotiated. Sibley, without having been directed by the realty company, or otherwise authorized, so to do, negotiated the two $5,000 notes sued upon, and they were acquired by the Cisco bank, for value, prior to their maturity.

Crane & Crane and Edward Crane, all of Dallas, for appellant.

Bailey & Bailey, of Dallas, for appellees.

HIGGINS, J. This suit was brought by the banking commissioner, as liquidating agent of the Commercial State Bank of Cisco, Tex.,

Sibley did not account to the realty company for the proceeds of the notes, and the company was not aware of the negotiation until long afterwards.

It is the position of the appellees that Sibley's title to the notes was defective because he negotiated same in breach of the faith in-

trusted in him, and the burden rested upon the plaintiff to prove that the Cisco bank, or some person under whom it claimed, acquired "the title as holder in due course," and the plaintiff failed to make such proof.

██ Whether the plaintiff discharged this burden is the controlling question in the case, for it is clear that Sibley negotiated the notes in breach of faith; his title was therefore defective (section 55, art. 5935, R. S.); and the burden as contended for by appellees rested upon the plaintiff (section 59, art. 5935 R. S.).

In Prouty v. Musquiz, 94 Tex. 87, 58 S. W. 721, Chief Justice Gaines said:

"It is the policy of the law merchant to promote the negotiability of commercial paper, and, for this reason, it is held that as to defenses not involving fraud in the execution or uttering of such paper, the burden, as a rule, is upon the defendant to show that the plaintiff acquired the paper either without paying value or that he had notice of the defense. But for the suppression of fraud, it is held in cases involving that element in the inception of the instrument, and sound policy dictates, that in order to avoid the defense, the plaintiff, when the fraud is shown, should prove that he obtained the paper before maturity in good faith and for a valuable consideration. But as to the question how far the plaintiff is to go in order to show good faith, the authorities seem not to be in full accord. The weight of authority as we think is, however, that when he has shown that he has paid value in the usual course of business and the circumstances attending the transfer cast no suspicion upon the fairness of his intent, he need go no further, and it then devolves upon the defendant to show notice to him in order to defeat a recovery, This seems to be based upon the theory that proof by the plaintiff that he has paid value under such circumstances raises a presumption of good faith which the defendant is called upon to rebut. Such we understand to be the doctrine laid down by the text-writer previously mentioned (1 Daniel, Negotiable Instruments, section 819); and is the doctrine which, in our opinion, is supported by the prevailing weight of authority."

See, also, Pope v. Beauchamp, 110 Tex. 279, 219 S. W. 447.

Paper negotiated in breach of faith is simply fraud in "uttering of such paper." It is shown by the foregoing quotation that, prior to the Negotiable Instrument Law, when the maker of a negotiable note showed fraud in the execution or negotiation of the same, the burden was upon the holder to show he acquired the same for value in good faith before maturity. Sections 55 and 59 of article 5935, R. S., are merely declaratory of the common-law rule as previously recognized in this state, nor does the Negotiable Instrument Law change the rule announced in Prouty v. Mus-

quiz as to the quantum of evidence necessary to discharge the burden cast upon the holder when fraud is shown in the execution or negotiation of the paper. It has been so held by the Waco and Eastland Courts of Civil Appeals in Ford v. Smith, 274 S. W. 166, and Caldwell v. McGarvey, 285 S. W. 859, with which ruling we agree. See, also, American National Bank v. Lundy, 21 N. D. 167, 129 N. W. 99; German, etc., Bank v. Lewis, 9 Ala. App. 352, 63 So. 741; Somerall v. Citizens' Bank, 211 Ala. 630, 101 So. 429; Scandinavian American Bank v. Johnston, 63 Wash. 187, 115 P. 102.

██ So, as heretofore indicated, the question is whether plaintiff has discharged the burden of showing that the Cisco bank, or some one under whom it claimed, acquired the notes before maturity for value in the usual course of business, and the circumstances attending the acquisition of the paper cast no suspicion upon the fairness of its intent. If plaintiff did so, then the burden cast upon him was prima facie discharged, and the burden of the evidence as distinguished from the burden of proof shifted to the defendants to show notice, actual or constructive, of the defective title to the notes. Downs v. Horton, 287 Mo. 414, 230 S. W. 103.

Sibley was a director of the realty company, the Cisco bank, and president of the First State Bank of Wylie.

The North Texas Bank was the Dallas correspondent and depository of the Cisco bank.

J. W. Massie, witness for plaintiff, testified:

"During the months of April and May, 1926, I resided at Dallas, Texas, and at that time I was assistant cashier of the North Texas National Bank. During the months of April and May, 1926, I was assistant cashier of the North Texas National Bank, and my duties were general supervision of bookkeeping, tellers and the transit department.

"My attention has been called to the fact that this suit has been brought by the Commissioner of Banking of the State of Texas, against San Jacinto Realty Company, John H. Kirby and others, on two promissory notes, each in the principal sum of $5,000.00, dated March 1, 1926, payable six months after date to 'the order of ourselves,' signed 'San Jacinto Realty Company by R. E. Jordan, President,' indorsed, 'San Jacinto Realty Company by R. E. Jordan, President,' and 'without recourse First State Bank of Wylie, by S. W. Sibley, President,' and that there is attached to each of these notes a written guarantee signed by John H. Kirby, dated March 1, 1926, addressed to S. W. Sibley, Dallas, Texas; that these notes were found among the assets of the Commercial State Bank of Cisco, Texas, when it was taken over by the State Banking Commissioner. (a) I do not know whether these notes and the written guarantees above described were ever in the

possession of the North Texas National Bank or not. (b) I don't know that they were in the possession of the North Texas National Bank, and therefore, I cannot state for what purpose these instruments were in the possession of the North Texas National Bank. (c) While our records do not show the nature of the items, the North Texas National Bank did, on April 28, 1926, forward to the Commercial State Bank of Cisco, Texas, an item for $5,000.00, and on May 3, 1926, forwarded another item for $5,000.00 to the Commercial State Bank of Cisco for a like amount for collection and remittance. These items were forwarded direct to the Commercial State Bank of Cisco by mail. (d) The consideration that was paid to or delivered to the North Texas National Bank for these items by the Commercial State Bank of Cisco, Texas, was that the Commercial State Bank of Cisco, Texas, remitted their drafts Nos. 1743 and 5418 for $5,000.00 each to cover the collections referred to in the former question. These drafts were received by the North Texas National Bank on April 30, 1926, and May 12, 1926. (e) The drafts issued by the Commercial State Bank of Cisco, Texas, were drawn on the North Texas National Bank, and were charged to the account of the Commercial State Bank, Cisco, on the dates received."

J. E. McCord, for the plaintiff, testified:

"During the months of April and May, 1926, I was acting as Vice-President of the Commercial State Bank of Cisco, Texas, and primarily as liquidating agent. My duties were to supervise the general management of said bank, and to dispose of assets accumulated by the former management and converting the same into money, and also to collect outstanding obligations due to the bank.

"The names of the officers of the bank, who were actually in charge of its affairs during the months of April and May, 1926, are D. K. Scott, S. W. Sibley, G. B. Kelly and Mrs. C. A. Gray. All of these parties were directors in the bank. D. K. Scott was President, S. W. Sibley, G. B. Kelly and Mrs. C. A. Gray did not have any office in the bank other than that of director so far as I know. All of the above named parties were actively connected with the bank and aided in passing on loans and on the business of the bank. During the period of April and May, 1926, I had charge of and supervised the loans and discounts of the bank, with the approval of the above named officers. On all matters of importance D. K. Scott and G. B. Kelly were both consulted by me and their approval was indispensable. On small matters the approval of any of the officers was sufficient.

"The Commercial State Bank of Cisco, Texas, purchased both of the notes for $5,000.00 each, involved in this suit, to which are attached written guarantees signed by Mr. John H. Kirby. These notes were paid for by drafts, dated April 29 and May 11, 1926, both drawn on the North Texas National Bank of Dallas, Texas, both payable to the said North Texas National Bank. These drafts were numbered 1743 and 5518 respectively, each in the sum of $5,000.00, and both signed by Robert C. Ayers, who was then acting as Cashier. * * *

"Prior to the purchase of these notes no negotiations were had with either S. W. Sibley, the North Texas National Bank of Dallas, the first State Bank of Wylie or any other person in reference to their purchase by the Commercial State Bank of Cisco, Texas, so far as I know. There were no letters or telegrams that passed in connection with the purchase of these notes so far as I know. I do not know of any telephone conversations or other conversations had in connection with the purchase of these notes or either of them."

The quoted testimony simply shows the Cisco bank acquired the notes for value before maturity.

 It seems to us, however, to be insufficient to show they were acquired in the usual course of business under circumstances casting no suspicion upon the fairness of the transaction so as to raise the "presumption of good faith."

The connection of the First State Bank of Wylie, an indorser of the notes, is wholly unexplained.

The only official of the Cisco bank who testified was McCord, and, so far as he knew, the notes were acquired and paid for without any prior negotiation whatever. He was the managing officer of the bank in charge of loans and discounts, subject to the approval of the directors, particularly Scott and Kelly, whose approval was indispensable in all matters of importance. None of the other officers or directors were called to testify concerning the circumstances attending the purchase of the notes, which in itself is suspicious, in the absence of a showing that their testimony could not be obtained. It is strange no managing officer of the Cisco bank, except McCord, was called to testify concerning the circumstances under which the paper was acquired, and, so far as McCord knew, it was acquired without any prior negotiation or investigation whatever, though he was in charge of loans and discounts of the bank. That is a very unusual transaction.

We therefore regard the evidence offered by plaintiff as insufficient to establish prima facie that the Cisco bank acquired the paper in due course of business and under circumstances which cast no suspicion upon the fairness of its intent. Plaintiff therefore failed to discharge the burden resting upon him under the rule announced in Prouty v. Musquiz, upon which he relies.

 It is further contended by appellant the court erred in giving the peremptory charge because the only evidence that Sibley negotiated the notes in breach of faith comes

from Jordan, who was the president of the realty company and Kirby's agent, and therefore an interested witness.

The authorities are not wholly consistent as to the weight to be given to the testimony of an interested witness in determining the propriety of a peremptory charge. As we view the question, each case in large measure depends upon its own facts.

The letter transmitting the notes to Sibley upon its face shows all the notes, except one, were not intended for immediate negotiation, but were to be held by Sibley until notified funds were needed, when he would be advised to place them.

■ Jordan testified no such instruction was ever given, and all the facts and circumstances reflected by the record corroborate this testimony. In this state of the record, the court did not err in assuming as true that Sibley negotiated the notes in breach of faith.

The sixth and seventh propositions relate to Kirby alone, and need not be considered, in view of the ruling with respect to the failure of plaintiff to discharge the burden resting upon him in order to show liability prima facie on the part of the maker of the notes.

Affirmed.