## HOLT v. FIRST STATE BANK OF MIAMI.

### No. 4262.

Court of Civil Appeals of Texas. Amarillo.
Sept. 17, 1934.

Rehearing Denied Oct. 15, 1934.

Sanders & Scott, of Amarillo, and Kinney & Ritchey, of Miami, for appellant.

Reynolds & Heare, of Shamrock, and Cook, Smith, Teed & Wade, of Pampa, for appellee.

MARTIN, Justice.

A former appeal of this case is reported in (Tex. Civ. App.) 32 S.W.(2d) 386. For convenience we briefly restate its essential facts: On August 28, 1928, James Cook negotiated a check for $802.78, drawn by appellant on a bank at Wheeler, Tex., to appellee bank. He received credit for the amount of the check, less $91.95, the amount of a note due by Cook's son to appellee bank, which it was agreed might be paid from the amount of said check and the son's said indebtedness to said bank discharged. A deposit slip was issued by appellee bank to said Cook for the amount of the deposit so made, containing, in part, the following notation printed thereon: "In receiving items for deposit or collection, this bank acts only as depositor's collecting agent and assumes no responsibility beyond the exercise of due care. All items are credited subject to final payment in cash or solvent credits. * * * This bank or its correspondents may send items, directly or indirectly, to any bank including the payor, and accept its draft or credit as conditional payment in lieu of cash; it may charge back any item at any time before final payment, whether returned or not, also any item drawn on this bank not good at close of business on day deposited."

On said last-named date credit for $710.85 was given Cook on the books of appellee bank, and said note for $91.95 surrendered. That within the next two days Cook checked out all of said deposit of $710.85. That the said check was forwarded to the bank at Wheeler through regular banking channels and was returned some days later unpaid; payment being refused for the alleged reason that the account of appellant with said Wheeler bank had been garnisheed by one J. B. Williams. The receipt of the unpaid check was the first notice appellee bank had of said garnishment and was subsequent to all the matters hereinbefore stated. The case was submitted upon the following special issue: "Question No. 1: Do you find from a preponderance of the evidence in this case that the plaintiff, The First State Bank of Miami, on or about the 27th day of August, 1928, took the $802.78 check in question for a fixed price in money or its equivalent? Answer yes or no." To which question the jury answered as follows: "Answer to question No. 1: Yes. P. T. Boston, Foreman."

Judgment was entered for appellee.

Under our view of the record many questions pass out of the case, because a judgment for the appellee was the only proper one that could have been rendered in this

case. The pleading and evidence in our opinion conclusively show that the appellee bank paid value for the check in question in the usual course of business, and under circumstances that cast no suspicion upon the fairness of its intent. There was no evidence of notice to appellee of any infirmity in the check prior to the time it surrendered the note of Cook's son and paid to Cook the entire balance of the deposit given him at the time of the negotiation of the check in question. Under the authorities we think unquestionably appellee was entitled to judgment, unless the notation on the deposit slip, quoted above, was sufficient to raise an issue of the purchase by appellee of the check in question. 6 Tex. Jur. p. 996; Prouty v. Musquiz, 94 Tex. 87, 58 S. W. 721, 996; Shaw v. San Jacinto Realty Co. (Tex. Civ. App.) 16 S.W.(2d) 341. The question is narrowed, we think, to a consideration of the effect to be given the printed notation on the deposit slip, which it is claimed raised a jury question as to the ownership of the check by appellee bank. The further ancillary proposition is necessarily involved as to whether the above facts show payment of value for the instrument sued on. The question was exhaustively considered by the Virginia Supreme Court in the case of McAuley v. Morris Plan Bank of Va., 155 Va. 777, 156 S. E. 418, 424, and from it we quote:

"In Bank of Gulfport v. Smith (1923) 132 Miss. 63, 95 So. 785, a check indorsed in blank was deposited with a deposit slip reading thus: 'Items not payable in Gulfport are taken at depositor's risk and credited subject to actual final payment. This bank as agent for depositor will forward such items, either direct to drawee, or another bank in the same city, or indirectly through correspondents in other cities.' The check was drawn on an out-of-town bank, and the depositor payee 'had practically no money' on deposit in the bank. On the same day the bank permitted the depositor to withdraw the entire amount of its deposit. There was no specific agreement entered into between the bank and the depositor either at the time of the deposit or at the time of the withdrawal. Upon presentation for payment, the check was dishonored, and the Gulfport bank sued the drawer. The plaintiff had no notice of any infirmity or defect in the check, and the court said this: 'In this case under the deposit slip the bank originally received the check for collection under the terms as therein stated. By the issuance of this slip it did not become a holder for value. Subsequent thereto that same day, however, it permitted this exact amount to be withdrawn by the auto company. By this act it waived the right to hold the check only for collection and become a holder for value of the check.' * * *

"In Old National Bank v. Gibson (1919) 105 Wash. 578, 179 P. 117, 6 A. L. R. 247, the payee of a check deposited it to his account in the Old National Bank. The deposit slip on which he listed the check had this: 'Items other than cash are received on deposit with the express understanding that they are taken for collection only.' Credit for the amount was entered on the depositor's account, and he on the same day checked out his entire balance, including the credit arising from the deposit of the check in question. Payment was stopped by the maker, and the bank sued the maker. * * * 'No rights are based upon the original deposit of the check for collection, but the contention is that the depositor, White, having been paid the full amount of his balance in reliance upon the check now in suit, then on deposit with it, the relationship of principal and agent, which had theretofore existed between the depositor White and the appellant bank, was terminated, and that it did, upon making such payment, cease to hold the check for collection, and became a holder in due course under the statute. The question then to be determined is whether, having originally received the check as agent for collection, the bank by honoring White's checks to an amount which entirely exhausted his balance, including the deposited check, thereby became a holder for value. * * *

" 'But if the bank did not waive its right or privilege to charge the check back to the depositor upon its dishonor, and yet advanced its money upon the credit of the check so deposited, there is ample authority to support the view that, by making such advances on the credit of the deposited check, it thereby became a holder in due course to the extent of such advances, notwithstanding that it may still have claimed the right to charge the check back to its depositor, if it saw fit. * * *

" 'It is, however, alleged and claimed in this case that, after the making of the deposit and the giving of the conditional credit before referred to, the bank and its depositor made a new and different contract with reference to the deposited check; that the latter, by presenting his own check and demanding the cash for his entire balance, and the bank by accepting such check and paying

the depositor his entire balance, in effect made a new contract, by which the bank waived the condition in the credit theretofore given, waived its right to charge back the check, if dishonored, and became the purchaser of the check for value without notice, or a holder in due course. No rule of law is perceived, which prevents a bank and its depositor from changing, modifying, or making new and supplemental contracts, as often as they may agree so to do. * * *

" 'Our negotiable instruments law, which is the uniform law common to so many states, sections 3417 and 3418, Rem. Code, provide:

" ' "Where value has at any time been given for the instrument, the holder is deemed a holder for value in respect to all parties who became such prior to that time.

" ' "Where the holder has a lien on the instrument, arising either from contract or by implication of law, he is deemed a holder for value to the extent of his lien."

" 'So that under the statute it is immaterial to this inquiry whether the bank, by paying its depositor's check, became the absolute owner of the check now in question, or, as some authorities seem to hold, obtained only a lien thereon to the amount of its advances. In either case, according to the plain language of the statute, it, under the facts pleaded here, became a holder for value to the full amount for which the check was drawn. The statute above referred to expresses only what has been the law of negotiable paper since the time "whereof the memory of man runneth not to the contrary." ' * * *

" 'A bank that gets possession of a negotiable instrument by giving the one who presents it credit for the full amount of the proceeds, and honors his checks or drafts to the same amount, or parts with some security, or in some other way makes itself liable for the amount of the deposit outside of the obligation created by the mere deposit, on the faith of the instrument, is the holder of the instrument for value.' Of course, this assumes that the bank has no notice of the invalidity of the paper."

It is also held:

"If, however, before receiving notice of any infirmity in the paper, the bank pays out on the checks of the depositor the full amount due him, including the discount, it becomes a purchaser for value, and is then entitled to full protection." Sperlin v. Peninsular Loan & Discount Co. (Tex. Civ. App.) 103 S. W. 232, 233.

"On the other hand, it is equally well settled that a bank or a person, by discounting negotiable paper, placing the same to the credit of the depositor, honoring his checks or drafts, surrendering to him securities, or in some other manner making advances and extending its credit on the faith of such deposit, thereby becomes a holder for value." 8 C. J. 483, § 700.

See, also, notes 80 A. L. R. 1064; 6 A. L. R. 255; 24 A. L. R. 902; and 60 A. L. R. 247.

It is further claimed that the court erred in striking, upon exception, the allegations of appellant's answer respecting the garnishment suit above referred to. It was not alleged that appellee was ever a party to said proceedings, or that the judgment rendered therein had ever been paid. The trial court we think correctly held that such ex parte proceeding could not affect the ownership of commercial paper in the hands of appellee.

The judgment is affirmed.