**FIRST NAT. BANK OF QUITMAN v. MOORE.**

**No. 6429.**

Court of Civil Appeals of Texas. Texarkana.

March 31, 1949.

Rehearing Denied May 12, 1949.

Sellers & Fanning, Sulphur Springs, T. C. Chadick, Quitman, for appellant.

Ramey & Ramey, Sulphur Springs, Ralph R. Rash, Sulphur Springs, for appellee.

HALL, Chief Justice.

On May 27, 1947, appellee, J. B. Moore, purchased from one A. D. Deaton a Ford pick-up truck in payment of which he gave Deaton his check in the amount of $1550.00 drawn on the Sulphur Springs State Bank. On May 28, 1947, Deaton deposited this check in the First National Bank of Quitman (appellant), and on the same day appellant bank permitted Deaton to draw out of said bank the amount of money represented by the check. The check was forwarded to the Sulphur Springs State Bank through regular banking channels and was returned some days later unpaid with the notation "payment stopped." On the 29th day of May, 1947, Deaton approached Moore, appellee, and requested him to pay to him (Deaton) the face value of said check, representing to Moore that he was in urgent need of money to pay some

claims, one of which was owing to Moore. In this connection Deaton represented to Moore that he had not drawn any money on the check at the appellant bank in Quitman, but had deposited same for collection, and exhibited to Moore a deposit slip, which Moore testified had written across its face in lead pencil the words "for collection," and suggested to Moore that he stop payment on the check at the Sulphur Springs State Bank. Pursuant to Deaton's request Moore paid to Deaton the value of the check and stopped payment on same at the Sulphur Springs bank. In the conclusions here reached, it is unnecessary to determine the admissibility of the conversations and transactions had between Deaton, notoriously insolvent, and Moore, subsequent to the issuance of the check.

Appellant bank instituted this suit against Moore, appellee, for the value of said check alleging first that appellant was the owner of the check in good faith for value without notice, and in the alternative, that appellant had a lien on the check for the money advanced thereon to Deaton. Appellee joined the issue with a general and special denial of all the allegations in appellant's pleadings. Trial was to the court which resulted in judgment for appellee.

By its first point appellant asserts that the trial court erred in not holding it to be the lawful owner in due course of the check in controversy.

The same day Deaton deposited the check in appellant bank he made two other deposits, one of $500.00 in cash and a cashier's check for $2500.00. On the same day he withdrew from the bank $2.50 and $2600.00 by two checks, and the bank charged to his account a $2,000.00 debit item, representing a check drawn by Deaton on the Cain Bank of Winnsboro, which had been returned to the appellant bank unpaid. This left a balance of $123.91 in Deaton's account with appellant. It is undisputed that at the time Deaton withdrew the funds represented by the check appellant bank had no notice of any infirmity in the check or of the transaction it represented. As a matter of fact there was no infirmity in either. The first notice appellant bank had of the stop-payment order of

appellee Moore was a telegram from the Dallas Republic Bank on June 1st or 2nd, 1947, informing it of such fact. So, it is clear from the facts listed above that on May 28, 1947, the date the proceeds from the check were withdrawn by Deaton, the bank became the owner and holder of said check for value in due course. Holt v. First State Bank of Miami, Tex.Civ.App., 74 S.W.2d 1050, w/d; Austin, Banking Commissioner v. Lacy, Tex.Civ.App., 2 S.W.2d 876, w/r; McAuley v. Morris Plan Bank of Virginia, 155 Va. 777, 156 S.E. 418, and authorities there cited. Also see 9 C.J.S., Banks and Banking, § 221, page 474. Appellee cites in support of his contention that the title to the check did not pass to appellant bank, the case of Heid Brothers, Inc. v. Commercial Nat. Bank of Hutchinson, Kansas, Tex.Com.App., 240 S.W. 908, 24 A.L.R. 904. We have carefully considered that case and conclude that it is not controlling here for the reason that the facts upon which it was decided are materially different from the facts here. . Neither do we think the terms of Vernon's Ann.Civ.St. art. 342—702, unqualifiedly constitute the appellant bank the agent of Deaton in collecting the check. The statute begins: "Except when otherwise provided by agreement, and except as to holders of negotiable instruments for value without notice," etc. These exceptions clearly indicate the inapplicability of the above statute to situations such as existed between plaintiff bank and Deaton on May 28, 1947, the date Deaton deposited Moore's check and withdrew the funds it represented.

As the matter stood on May 28, 1947, appellee Moore was liable to the appellant bank for the value of the check, and his liability would continue unless and until the appellant bank did or refrained from doing some act which was its duty to do reasonably calculated to cause appellee Moore to change his position with respect to the transaction to his damage. The record reflects that appellee Moore testified that Deaton came to his place of business in Sulphur Springs and requested him to pay him (Deaton) cash on the check. Deaton's reason for wanting the money on the check was to pay certain debts owing by him, one

of which was to Moore. Appellee testified further that Deaton told him on this occasion that he (Deaton) had deposited the check in appellant bank "for collection and that he had gotten none of the money." Moore also testified that he saw the deposit slip issued by the appellant to Deaton, and written across the face of it were the words "for collection." The copy of the deposit slip exhibited to appellee by Deaton was not produced but the original was produced by the appellant bank and introduced in the record, a copy of which follows:

"First National Bank
Deposited by
A. D. Deaton
Quitman, Texas 5/28 1947

In receiving items for deposit or collection, this bank acts only as depositor's collecting agent and assumes no responsibility beyond the exercise of due care. All items are credited subject to final payment in cash or solvent credits. This bank will not be liable for default or negligence of its duly selected correspondents nor for losses in transit, and each correspondent so selected shall not be liable except for its own negligence. This bank or its correspondents may send items, directly or indirectly, to any bank including the payor, and acc * * * draft or credit as conditional payment in lieu of cash; it may charge back any item . * * * before final payment, whether returned or not, also any item drawn on this bank— * * * close of business on day deposited.

(Word or words indicated by asterisks * * * are obliterated by a hole punched in sheet.)

All checks not on this bank subject to final payment

| | Dollars | Cents |
|---|---|---|
| Currency v (check mark) | 500 | 00 |
| Silver | | |
| Checks as follows: | | |
| CH——— | 1550 | 00 |
| | 2050 | 00 |
| By B | | |
| Total | 2050 | 00" |

Was this evidence sufficient to cause appellee Moore to change his position in the transaction to his damage by cashing the

check at Deaton's request? The trial court by entering judgment for Moore impliedly held that it was sufficient to effect such purpose. The original deposit slip introduced by the bank did not contain the pencil notation "for collection"; it did, however, clearly state in printing that appellant bank was receiving the check for collection, and that it was acting "only as depositor's collecting agent and assumes no responsibility beyond the exercise of due care. All items are credited subject to final payment in cash or solvent credits."

But Moore must have been ignorant of the true situation and must not have been negligent in his dealings with Deaton. If at the time he cashed the check for Deaton he had knowledge of the truth, that is, that the bank had already paid Deaton the value of the check, or had the means by which, with reasonable diligence, he could acquire such knowledge so that it would be negligence on his part to remain ignorant by not using this means, he cannot claim to have been misled by relying upon the representations of the bank as contained in the deposit slip. 3 Pomeroy's Equity Jurisprudence, 5th Ed., p. 219, Sec. 810; Ford v. Warner, Tex.Civ.App., 176 S.W. 885. The question here is, did Moore exhaust all means at hand to determine the truth of the statement made to him by Deaton, that is, that he had collected none of the money from appellant bank represented by said check? We have concluded that he did not. We judicially know that the City of Sulphur Springs is the County Seat of Hopkins County and that the City of Quitman is the County Seat of Wood County, which adjoins Hopkins County on the south. The transaction between Moore and Deaton, which resulted in Moore's paying to Deaton the value of the check, occurred in Sulphur Springs and the appellant bank is located in Quitman, Texas, not many miles south of the City of Sulphur Springs. It seems to us that Moore was negligent in not, either requiring Deaton to present the check theretofore given to him by Moore or calling appellant bank over the telephone and verifying the statement of Deaton with respect to his representation that he had not received any cash from the bank for the check. These ave-

nues of knowledge were clearly open to Moore, and, in our opinion, he was negligent in not pursuing one or both of them so as to learn the real truth with respect to the status of the check and the rights of appellant bank thereto. It must be remembered that appellee Moore issued and placed in circulation the check here in controversy as a negotiable instrument. He should have known that rights of other persons would or might attach to it in due course, and that such persons would suffer damages if he were permitted to void the check as he and Deaton attempted to do two days after it had left his hands, and one day after it had been bought and paid for by the appellant bank.

This case seems to have been fully developed and we see no reason why it should be reversed and remanded for another trial. Therefore the judgment of the trial court is reversed and judgment is here rendered for appellant bank.

Reversed and rendered.