CITY STATE BANK IN WELLINGTON,
Appellant,

v.

Nathan LUMMUS et al., Appellees.

No. 6365.

Court of Civil Appeals of Texas.

Amarillo.

Jan. 18, 1954.

Rehearing Denied March 8, 1954.

Porter & Lowe, Clarendon, for appellant.

Reynolds & Hardin, Shamrock (Underwood, Wilson, Sutton, Heare & Boyce, Amarillo, on motion for rehearing), for appellees.

NORTHCUTT, Justice.

This is an action brought by the City State Bank in Wellington against Nathan Lummus and J. T. Boyd to recover upon a check in the principal sum of $9,000, and dated February 26, 1952. Lummus gave Boyd this check for the sum of $9,000, drawn upon the Farmers and Merchants State Bank at Shamrock, Texas, and made payable to the order of J. T. Boyd. J. T. Boyd, on the same date but after banking hours, endorsed said check and deposited same to his account in the City State Bank in Wellington. Since the deposit was made after banking hours, the bank did not credit the $9,000 to Boyd's account until the next morning, February 27, 1952, and then sent the check to the Shamrock bank. Mr. Lummus stopped payment upon the check and the check was returned by the Shamrock bank to the Wellington bank. The City State Bank in Wellington brought suit against Lummus as the maker of the check and against Boyd as the payee and endorsee of the check, claiming the bank was the holder and owner of said check in due course and for valuable consideration. The bank contended it paid value for the check by crediting the same to the account of

Boyd and by paying out said sum on checks drawn by Boyd on appellant bank. The appellant bank further contends that said sum had been paid out on checks drawn by Boyd upon the Wellington bank and cleared through the Wichita National Bank before the Wellington bank had any notice that payment had been stopped by Lummus on the check given by him. Boyd did not answer and judgment was granted the City State Bank in Wellington as against him and he is not a party to this appeal. Lummus answered and contested the suit upon the grounds of fraud upon the part of Boyd in securing the check from Lummus. Lummus alleged that Boyd secured the check by fraud in that he promised Lummus that if Lummus would give Boyd the check for the $9,000 that Boyd would in return bring approximately $10,000 worth of cattle to the Shamrock Livestock Auction for sale on the 27th day of February, 1952. Lummus further alleged failure on the part of Boyd to deliver the cattle as he had promised and because of such failure of Boyd to deliver the cattle he, Lummus, had stopped payment on the check.

After the evidence was heard, the City State Bank in Wellington made its motion for an instructed verdict and the same was overruled by the court. The court prepared its charge to the jury and said bank presented its objections to the court's charge but the same were overruled by the court. The case was then presented to a jury upon two special issues as follows:

"Special Issue No. 1.

"From the greater weight of the evidence introduced in your hearing, do you find that the plaintiff, City State Bank in Wellington, on or about the 26th day of February, 1952, took the $9,000.00 check in question for a fixed price in money, or its equivalent in money?

"Answer 'yes' or 'no'

"Answer: 'No'.

"Special Issue No. 2:

"From the greater weight of evidence introduced in your hearing, do you find that the City State Bank in Wellington, through its cashier or any executive officer was notified prior to the time the draft was mailed to the Wichita National Bank on February 28, 1952, that such $9,000.00 check would be dishonored?

"Answer 'yes' or 'no'

"Answer: Yes."

Upon return of the above issues and answers of the jury thereto as above shown, the City State Bank in Wellington presented its motion for judgment non obstante veredicto, which motion was overruled. Upon the verdict of the jury, the court granted judgment that the bank recover nothing as against Lummus. Said bank, appellant herein, made and presented its motion for a new trial but the same was overruled by the court. From the order overruling this motion for a new trial, the City State Bank in Wellington excepted and gave notice of appeal and perfected such appeal.

For convenience, the City State Bank in Wellington will hereafter be referred to as appellant and Nathan Lummus as appellee. Appellant's first assignment of error is that the trial court erred in overruling appellant's motion for an instructed verdict. Article 5932, of the Texas Negotiable Instrument Act provides that an instrument to be negotiable must conform to the following requirements:

"1. It must be in writing and signed by the maker or drawer;

"2. It must contain an unconditional promise or order to pay a sum certain in money;

"3. Must be payable on demand, or at a fixed or determinable future time;

"4. Must be payable to order or to bearer; and

"5. Where the instrument is addressed to a drawee, he must be named or otherwise indicated therein with reasonable certainty."

The check in question contained all of these requirements.

■ Article 5934 of the Texas Negotiable Instrument Act provides that an instrument is negotiated in the following manner:

"Sec. 30. An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer it is negotiated by delivery; if payable to order it is negotiated by the indorsement of the holder completed by delivery.

"Sec. 31. The indorsement must be written on the instrument itself or upon a paper attached thereto. The signature of the indorser, without additional words, is a sufficient indorsement."

The check in question was payable to the order of J. T. Boyd and was endorsed by him in writing upon the instrument in question and delivered by him to the appellant. This would constitute the appellant the holder of the check.

As to what constitutes a consideration, Article 5933 of the Texas Negotiable Instrument Act provides as follows:

"Sec. 24. Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value.

"Sec. 25. Value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes value; and is deemed such whether the instrument is payable on demand or at a future time.

"Sec. 26. Where value has at any time been given for the instrument, the holder is deemed a holder for value in respect to all parties who became such prior to that time.

"Sec. 27. Where the holder has a lien on the instrument, arising either from contract or by implication of law, he is deemed a holder for value to the extent of his lien.

"Sec. 28. Absence or failure of consideration is matter of defense as against any person not a holder in due course; and partial failure of consideration is a defense pro tanto, whether the failure is an ascertained and liquidated amount or otherwise."

Article 5935 of the Texas Negotiable Instrument Act further provides that the rights of the holder are as follows:

"Sec. 51. The holder of a negotiable instrument may sue thereon in his own name and payment to him in due course discharges the instrument.

"Sec. 52. A holder in due course is a holder who has taken the instrument under the following conditions:

"1. That it is complete and regular upon its face;

"2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"3. That he took it in good faith and for value;

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

After all the evidence was introduced and all parties had closed, the appellant made and presented its motion for an instructed verdict, among other reasons, because there was no disputed fact issue in the case under the record and the evidence did not show that notice of dishonor was given before the bank, appellant herein, paid out money for the purchase of the check here in question. If this contention be right, then the court should have instructed a verdict for the plaintiff (appellant herein).

The court, in effect, asked the jury by Special Issue No. 1 if the appellant on or

about February 26, 1952, took the check for a fixed price in money or its equivalent in money, to which the jury answered, "no". Under the record, this was not the sole issue involved as to the consideration. The evidence shows the deposit to Boyd's account was made on February 27, 1952, and this money was paid out by the appellant bank to the Wichita National Bank on February 28, 1952. The sole issue is not what took place at the immediate time that the bank took the check, but there is the further issue as to the appellant paying out the money later upon such deposit. The second issue submitted to the jury by the court was whether the appellant bank, through its cashier or any executive officer, was notified prior to the time the draft was mailed to the Wichita National Bank on February 28, 1952, in payment of Boyd's checks, that the $9,000 check would be dishonored. The jury answered this issue, "yes". If the evidence supports this answer of the jury that the bank had notice of dishonor before it paid out the money to the Wichita National Bank, the appellant cannot recover on the $9,000 check.

Boyd was the holder and owner of the check at the time he deposited the check with appellant. Article 342–702 of Vernon's Civil Statutes of the State of Texas makes the bank the agent of the owner of the check—"except as to holders of negotiable instruments for value without notice". If the appellant was the holder of the check for value without notice, then it was entitled to recover as against the maker of the check. There is no direct testimony in this record that any official of appellant bank was ever notified prior to the payment to the Wichita National Bank that the Lummus check would not be paid. Appellee contends that the evidence reveals that Mr. Brummett was an official of the appellant bank and that he was notified that the check would not be paid. By implication it might be considered that Mr. Brummett was an official of the appellant bank but whether he was such official or not is immaterial. The question as asked in Special Issue No. 2 was whether or not the appellant bank had been notified prior to the time the draft was mailed to the Wichita National Bank on February 28, 1952, that such $9,000 check would be dishonored. There is no evidence in this record that Mr. Brummett (admitting he was an official of appellant bank) or any other official of the bank was notified, before it mailed to the Wichita National Bank the draft, that the Lummus check would be dishonored. The record reveals by direct testimony that the bank did not know the check would be dishonored at the time of sending the draft to the Wichita National Bank. If it be admitted that the appellant bank was notified on February 28, 1952, that the $9,000 check would not be paid, there is no evidence in the record that such notice was prior to the payment made by the appellant to the Wichita bank.

■ Section 24 of Article 5933 of the Negotiable Instrument Act provides as above stated: "Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration; *and every person whose signature appears thereon to have become a party thereto for value.*" (Emphasis ours.) The check itself, bearing the signature of both Boyd and the City State Bank in Wellington as endorsers, was sufficient to make a prima facie case in favor of appellant bank and the burden was upon appellee Lummus to establish that appellant had not become a party thereto for value. Lummus failed to sustain this burden.

In discussing a similar Negotiable Instrument Act as ours, the Supreme Court of the State of Washington, in the case of Old Nat. Bank of Spokane v. Gibson, 105 Wash. 578, 179 P. 117, 6 A.L.R. 247, held:

"Under Negotiable Instruments Law, a bank which received a check and gave a conditional credit became a holder in due course and may sue the maker, where it allowed depositor to draw out his entire balance, and it is immaterial whether bank relied solely upon deposited check or also in part relied upon individual worth of its depositor."

Section 26 of Article 5933 of Texas Negotiable Instrument Act as above set out states where value has at any time been given for the instrument the holder is deemed a holder for value in respect to all parties who became such prior to the time. Holt v. First State Bank of Miami, Tex.Civ.App., 74 S.W.2d 1050, in which a writ was dismissed by the Supreme Court, held:

"Bank receiving check for deposit without notice of infirmity and permitting depositor to withdraw entire deposit before check was returned unpaid was 'purchaser' of such check and could recover from maker, notwithstanding notation on deposit slip that bank acted only as depositor's collecting agent, and that items were credited subject to final payment."

In First Nat. Bank of Quitman v. Moore, Tex.Civ.App., 220 S.W.2d 694, in which a writ was dismissed by the Supreme Court, held:

"Bank which permitted depositor of check previously deposited on same day to draw out amount of money represented by check became a 'holder in due course' and could recover amount of check from drawer after issuance of stop payment order. Vernon's Ann. Civ.St. art. 342–702."

The court further said:

"It must be remembered that appellee Moore issued and placed in circulation the check here in controversy as a negotiable instrument. He should have known that rights of other persons would or might attach to it in due course, and that such persons would suffer damages if he were permitted to void the check as he and Deaton attempted to do two days after it had left his hands, and one day after it had been bought and paid for by the appellant bank."

The undisputed record in this case reveals that the City State Bank in Wellington permitted Boyd (the depositor of the check previously deposited) to draw out of his account the money credited to him, including the $9,000 check prior to any notice that such check would not be paid. Under such state of the record, the trial court should have granted appellant's motion for an instructed verdict and appellant's first assignment of error is sustained. Since sustaining the first assignment of error, there is no necessity of discussing the other assignments. Therefore, the judgment of the trial court is reversed and judgment is here rendered for appellant bank.

Reversed and rendered.

### On Motion for Rehearing.

#### PER CURIAM.

It is contended by the appellee in his motion for rehearing that the conversation that the witness, Nelson, claims to have had with Roberts on February 28, 1952, at 10:45 a. m. shows that appellant must have known that Lummus would stop payment on the $9,000 check, "as any other inference would brand Lummus as an incompetent." Mr. Nelson was not permitted to testify as to what that conversation was. As contended by appellee, however, if Nelson had been informed the $9,000 check would not be paid it could not reasonably be presumed that he bought the check after being so notified. Mr. Roberts denied he ever called Mr. Nelson about the $9,000 check.

Appellee further contends that testimony of Mr. Skidmore shows that he advised Mr. Brumett on February 28, 1952, the $9,000 check would not be paid but there is no such showing in the record. All the record shows is that Mr. Skidmore was asked if he had a conversation with Mr. Brummett concerning a $9,000 check that was supposedly given to Mr. Lummus on or about February 28, 1952, but there is nothing in the record to show when that conversation took place. The question asked is about a check that was given on February 28 and not about a conversation on February 28. There is no showing that appellant had any notice prior to paying

out the money on February 28, 1952, that the check would not be paid. From a careful consideration of the entire case, we are of the opinion that the disposition thereof was correct.

It is ordered that the motion for rehearing be in all things overruled.